No. 22.—JOHN BERRY, plaintiff in error, *vs.* THE LESSEE OF GEO. OSBORNE, administrator, &c. defendant in error.

[1.] Evidence that a lot "was known in the neighborhood as John Hardy's land", is hearsay and illegal.

[2.] The facts in this case were such as to call for the charge of the Court.

Ejectment, in Bibb Superior Court. Tried before Judge POWERS, November Term, 1853.

The errors assigned in this case, arose upon the refusal of the Court below to grant a new trial.

It appears that George Osborne, as the administrator of Nancy Johnson, (who was the drawee of lot No. 206, 4th district of Bibb county,) brought an action of ejectment against John Berry, who was the tenant of William Bailey, for said lot. The defendant relied upon the Statute of Limitations. He placed in evidence two deeds—one from D. Wright to John Hardy, dated 17th January, 1840; and the other from John Hardy to William Paul, dated 26th February, 1849. He then proposed to prove that the lot " was known in the neighborhood as John Hardy's land". This was ruled out by the Court. The evidence was, that Hardy went into possession soon after the date of the deed from Wright; that he continued in pos-

session for a short time, and then Bush went into possession as his tenant, and continued for about one year. Other tenants were in possession at various times; but frequently the land was tenantless, for as much as nine months at a time. Hardy swore that he exercised ownership over it all the time.

The Court charged the Jury that to constitute title by possession, under the Statute, the possession itself must be *bona fide*, under title, open, continuous and adverse, for seven years. Any abandonment of possession, with a view to abandonment, destroyed the title up to that time. If Hardy's title and possession were fraudulent, the possession so fraudulently held by him, could not be tacked to the years in which it was, *bona fide*, held by others, to make up the term of seven years in them, adverse to the true owner.

The motion for a new trial was—

1st. The error in the Court, in rejecting the evidence offered, as above stated.

2d. The error of the Court, in charging as above stated.

3d. That the verdict was contrary to law and evidence.

The Court refused to grant a rule for a new trial, and defendant excepted.

STUBBS & HILL, for plaintiff in error.

POE, NISBET & POE, for defendant in error.

*By the Court.*—BENNING J., delivering the opinion.

[1.] Ought the defendant to have been allowed to prove that the lot "was known in the neighborhood as John Hardy's land?" In offering to prove this, the defendant's object was not to identify the lot, but to prove ownership of it in Hardy. Such being the object, the proof offered was illegal, as amounting to hearsay. Hearsay "denotes that kind of evidence which does not derive its value, solely, from the credit to be given to the witness himself, but rests also, in part, on the ve-

racity and competency of some other person". (1 *Greenl. Ev.* §99.)

The defendant, therefore, ought not to have been allowed to introduce this proof. In not allowing him to do it, the Court, consequently, did right.

[2.] Was the charge of the Court, in any particular, erroneous?

It is insisted for the plaintiff in error, that it was, and in this particular, viz: "If Hardy's title and possession were fraudulent, the possession so, fraudulently, held by him, could not be tacked to the years in which it was, *bona fide*, held by others, to make up the time of seven years in them, adverse to the true owner". And it is insisted that the charge was erroneous in this particular, because there was nothing in evidence to justify any charge at all, upon the point to which this charge is applicable, because there was no evidence going to show that Hardy's possession was fraudulent".

Is the plaintiff in error right, in respect to this matter of fact? Was there really no such evidence?

Let us see. Hardy claimed under a deed from one "Dionyssius J. C. Wright", bearing date in 1840. In the signature to this deed, the middle initial letters, whatever they were, had been erased, and the letters "J. C." written just above the place of erasure, with a caret underneath. This is a thing which would have been likely to occur, if the person who made the signature was not Dionyssius J. C. Wright, but was somebody personating him. It is not such a thing as would have been likely to happen, if the person who made the signature was Wright himself. It is, in short, a thing from which the Jury might infer that the deed was made, not by Wright himself, but by some one personating him, and with a view to defraud him.

It is also a thing which the Jury might infer to have been done, at the time when the deed was executed; and therefore, done in the presence, and with the *knowledge* of Hardy.

There are other facts in the case, which the Jury might consider as showing that Hardy knew something about this deed

to be wrong.  He bought the land in 1840, the date of the deed, for $500, according to the face of the deed, and kept it until 1849, when he sold it for $200.  He took to himself a deed, with warranty—he made to his own vendee but a quit-claim deed.  Building a log cabin, he let it go to decay.  He deadened ten or twelve acres for clearing, and then cleared only a quarter of an acre.  He suffered the place, frequently, to be vacant—a harbor for any body without a home—once for a woman of ill-fame, whom he had let stay until the neighbors, wearied out with the nuisance, pulled down the cabin to abate it.  It is not until after more than seven years have elapsed, that the place, in the hands of his alienee, Paul, begins to look like a place that has an owner who believes in his ownership. After the lapse of that time, the improvements begin to be real and substantial.  These facts were proved.

. These things being so, the plaintiff in error is not right, in respect to this matter of fact.  From these things, the Jury might have inferred that Hardy's possession was fraudulent.

It follows, that the charge of the Court complained of, was called for by the facts of the case.

And if called for, it is not insisted that it was wrong.  Nor was it wrong, in the judgment of this Court.

The verdict does not appear, to this Court, to have been contrary to law or evidence.

The refusal of the Court to grant a new trial is, therefore, on the whole, affirmed.