## 38643. MOMON v. THE STATE.

HILL, Presiding Justice.

The defendant, Ronald L. Momon, was convicted by a jury of one count of aggravated sodomy. On appeal the conviction was affirmed. *Momon v. State,* 161 Ga. App. 629 (288 SE2d 767) (1982). We granted certiorari.

Defendant and his common law wife were indicted jointly on one count of rape and two counts of aggravated sodomy upon Marie Caldwell. The defendant was found guilty of one count of aggravated sodomy involving Ms. Caldwell and the defendant's common law wife. He was found not guilty of the rape and aggravated sodomy in which he was alleged to be the actual perpetrator. At defendant's trial the state introduced the testimony of two police officers as to an earlier rape in which defendant had been identified by the victim as the perpetrator.

Detective D. D. Henry, an investigator with the sex crimes unit, was allowed to testify for the state, over repeated objections by the defendant that Detective Henry's testimony was hearsay and the crimes were not similar, that one Ann Rembert (since deceased) reported being abducted and raped by two men in a late 1960 greenish

blue automobile, that the defendant was arrested ten months later, and that Ms. Rembert identified the defendant's photograph from a photographic array and identified him in a lineup the following day.

Detective C. A. Turner, also with the sex crimes unit, was allowed to testify for the state, over the defendant's objections based on hearsay and lack of similarity of the crimes, that he investigated a call from Ann Rembert, who reported being abducted by two men in a late 1960 four-door, light green or blue Dodge, and being taken to an elementary school yard and repeatedly raped. Ann Rembert's death certificate was introduced, over objection, to explain her absence.

Defendant's objections to admission of evidence of other crimes were overruled on the ground that the crimes were sufficiently similar to show identity, motive, scheme, plan, bent of mind and course of conduct. His objections that the officers' testimony was hearsay were overruled on the ground that their testimony explained the officers' conduct.

Code § 38-301 provides as follows: "Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity." Code § 38-302 provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence."

These two Code sections come from the Code of 1863. Code § 38-301 apparently was adopted from Greenleaf's definition of hearsay. Green, Ga. Law of Evidence, p. 493 (1957); see also *Berry v. Lessee of Osborne,* 15 Ga. 194, 195-196 (1854). Greenleaf defined hearsay as follows: ". . . it denotes that kind of evidence, which does not derive its value solely from the credit to be given to the witness himself, but rests also, in part, on the veracity and competency of some other person." Greenleaf, Evidence, p. 127 (5th ed. 1850). After defining hearsay, Greenleaf went on to say that ". . . it does not follow, because the writing or words in question are those of a third person, not under oath, that therefore they are to be considered as hearsay. On the contrary, it happens in many cases, that the very fact in controversy is, whether such things were written, or spoken, and not whether they were true. . . ." Id. at p. 127. Greenleaf then wrote: "Thus, where the question is, whether the party acted prudently, wisely, or in good faith, the *information,* on which he acted, whether true or false, is original and material evidence. . . . So, also, *letters and conversation* addressed to a person, whose sanity is the fact in question, being connected in evidence with some act done by him, are

original evidence to show whether he was insane, or not. The *replies* given to inquiries made at the residence of an absent witness, or at the dwelling-house of a bankrupt, denying that he was at home, are also original evidence. . . . This doctrine applies to all other communications, wherever the fact that such communication was made, and not its truth or falsity, is the point in controversy." (Emphasis in original.) Id. 127 to 129.

Thus, it appears that Code § 38-302 also had Greenleaf as its origin. In addition, it appears that Code § 38-302 should be understood not as an exception to the rule against hearsay but as an explanation of what is not hearsay. Green, Ga. Law of Evidence, § 288 (1957).

To prevent an overly broad interpretation of Code § 38-302, we adopt the following: When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. Green, Ga. Law of Evidence, § 300 (1957); *Brewer v. Henson,* 96 Ga. App. 501, 502 (100 SE2d 661) (1957). But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc., on which he or she acted shall not be admissible under Code § 38-302. In the case before us, the conduct and motives of the police officers were not relevant to the issues on trial.

As noted above, definitions of hearsay generally include the element that a statement made out of court is offered in evidence *to prove the truth* of the matter stated in the out-of-court statement. McCormick on Evidence, § 246 (1972); 5 Wigmore, § 1361; Green, Ga. Law of Evidence, § 217 (1957).

In the case before us, the testimony of the two detectives was offered to prove that Ann Rembert, deceased, was raped and that this defendant committed the rape. Their testimony was hearsay and was not admissible under Code § 38-302 to explain the detectives' conduct or motives. The admission of the detectives' testimony concerning the rape of Ann Rembert allegedly by the defendant was error.

However, in view of the fact that the defendant was found not guilty of the two counts in which he was charged with being the actual perpetrator and was found guilty only of the count in which it was charged that his common law wife was the actual perpetrator, we find it more than highly probable that the error did not contribute to the verdict. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur, except Jordan, C. J.,*

*Marshall and Smith, JJ., who dissent.*

DECIDED SEPTEMBER 8, 1982 —
REHEARING DENIED SEPTEMBER 28, 1982.

Murray M. Silver, for appellant.
Lewis R. Slaton, District Attorney, Wendy L. Shoob, Assistant District Attorney, for appellee.

JORDAN, Chief Justice, dissenting.
My reason for dissenting is that I consider the standard laid down in the majority opinion too severely restricts the application of Code § 38-302. While the use of that Code Section by law enforcement officers has perhaps been abused at times, I do not find this sufficient reason for restricting its application in proper cases. I therefore dissent to the majority opinion's narrow interpretation of this Code Section.
I am authorized to state that Justice Marshall joins in this dissent.

SMITH, Justice, dissenting.
I respectfully dissent. Although I agree fully with the majority's analysis of the hearsay issues in this case, I cannot agree that the admission of the disputed evidence was harmless error. In my view, it is unrealistic to contend, as does the majority opinion, that it is "highly probable" that testimony by police officers describing a prior alleged rape by appellant did not influence the jury and contribute to the guilty verdict on the aggravated sodomy charge. Since the conviction was based in part on inadmissible hearsay, I would reverse.