## 39158. GASKINS v. THE STATE.

SMITH, Justice.

James Aubrey Gaskins was tried, found guilty, and sentenced to life imprisonment for the January 1982 slaying of Agnes Mary Harrison. Gaskins appeals from his conviction, enumerating as error seven rulings by the trial court. We affirm.

On January 19, 1982, Agnes Mary Harrison was shot to death in the kitchen of her East Point home. The victim was appellant's ex-wife. Neighbors of Mrs. Harrison testified that at about 10:00 on the night of the shooting, they saw appellant and his sister drive up and park outside of Mrs. Harrison's house. Appellant got out of the car, knocked on the carport door, conversed for awhile with the victim, then stepped inside the house. His sister remained in the car parked outside. About this same time, Mrs. Harrison telephoned her next door neighbor, Wynelle Gee, to tell her that appellant and his sister were there "to cause trouble" and to ask Mrs. Gee to come over immediately. Mrs. Gee ran to the victim's house, arriving shortly before the East Point police, who had been alerted by another

neighbor.

Standing outside the house, Gee and police heard an argument and a woman's screams. When police knocked on the door, a male voice (later identified by Gee as belonging to appellant) answered, "Who's there?" The police officers identified themselves. Suddenly several gunshots rang out in rapid succession. Police broke down the door and found Mrs. Harrison lying on the kitchen floor, mortally wounded. A .32 caliber revolver containing five spent cartridge casings was found in the victim's right hand. Appellant was not inside the house. A neighbor testified at trial that after the screaming, she heard someone running through her backyard, away from the victim's house.

Mrs. Harrison died on January 20, 1982 as a result of gunshot wounds to her head and neck. An autopsy revealed that the victim had been shot in both her hands, her right arm, the back of her head, and the right side of her neck. In addition, the victim's head and left shoulder were bruised. In the medical examiner's opinion, none of the wounds were self-inflicted. Ballistics tests showed that the bullets recovered from the body and from Mrs. Harrison's kitchen were all fired from the revolver recovered from the victim's hand.

Appellant was arrested at an Atlanta bar on January 21, 1982, two days after the shooting. Detective Freeman of the East Point police department administered the Miranda warnings to appellant upon arrest. Police then drove the suspect to the police station, where after once again being advised of his rights, appellant made a statement. He denied shooting his ex-wife and claimed that on the night of the shooting he was at a friend's house on Stewart Avenue.

A committal hearing was held four days after appellant's arrest. At the conclusion of testimony by the state's witnesses, appellant informed the judge that he "wanted to tell the whole truth about the case." After repeated warnings by the hearing judge that he should not testify, appellant proceeded to give his version of the events of the night of January 19, 1982. He testified that his sister drove him to see the victim that night. When he arrived, he and his ex-wife sat in the den and talked until Mrs. Harrison complained of a headache and excused herself to get an aspirin tablet. According to appellant, she returned from the bathroom with a pistol in her hand. Afraid for his life, appellant fled out the basement door into the backyard, hearing a gunshot as he left the house. Later, he testified, he hailed a cab and was taken to a friend's house on Stewart Avenue.

Appellant also testified at trial, relating a version of Mrs. Harrison's shooting which was similar, but not identical to, his statement at the committal hearing. While on the witness stand, appellant testified that on January 19, 1982, he and the victim had

tentatively planned to go to a movie. When he arrived at his ex-wife's house, however, she did not feel well, and the couple decided just to stay at home and talk. Appellant further testified that when he went to the kitchen for a glass of water, Harrison walked into her bedroom, emerged with a pistol, and fired once at appellant, missing him. He then grabbed Harrison by the arm and pushed her into the dining room. As he ran out the basement door, appellant testified, he heard several gunshots. Appellant denied shooting his ex-wife, and denied that he heard screams or police knocking on the door that night.

1. We hold that the evidence introduced at trial authorized a rational trier of fact to find appellant guilty beyond a reasonable doubt of the murder of Mary Agnes Harrison. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant urges that the trial court erred in allowing into evidence statements he made to police officers immediately after his arrest. Appellant's primary contention on appeal is that his statements were involuntary because he had consumed "two or three cases of beer" on the date of his arrest. In a Jackson-Denno hearing held outside of the jury's presence prior to trial, Detective Freeman testified that after appellant's arrest, he escorted appellant into his office and read him the Miranda rights from a preprinted card. Freeman testified that no threats of harm or promises were made, and that appellant, although tipsy, was coherent. In his statement appellant denied that he shot his ex-wife, claiming that he was at a friend's house on the night of the shooting. At the conclusion of the hearing, the trial court ruled that the appellant's statement was voluntarily made and admissible.

Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal. *Woodruff v. State,* 233 Ga. 840, 844 (213 SE2d 689) (1975). The trial judge's ruling that appellant's post-arrest statement was voluntary is supported by the evidence. This enumeration is without merit.

3. Appellant contends that statements which he made at his committal hearing should have been excluded from evidence. After repeated advice not to testify and a warning that any statement could be used against him at trial, appellant insisted on giving his version of the shooting. The circumstances surrounding this second statement were also the subject of testimony by Detective Freeman at the Jackson-Denno hearing conducted prior to trial, and the trial court found that the committal hearing statement was voluntary. We agree. We find appellant's contention that he was still drunk and unable to understand the proceedings four days after his arrest to be without merit. The trial court's ruling was correct.

4. Gaskins raises hearsay objections to various statements allowed into evidence by the trial judge. During the state's case, Detective Freeman testified that at 2:30 a.m. on January 20, 1982, appellant's sister told him that she had driven appellant to the victim's house earlier that night and that she had last seen the murder weapon at her house on January 19. The state offered this testimony under Code Ann. § 38-302 for the purpose of explaining Detective Freeman's conduct in obtaining a warrant for appellant's arrest later that morning. We agree that the statements were admissible as original evidence under Code Ann. § 38-302, but only for the limited purpose of explaining to the jury Freeman's continuing investigation into Mrs. Harrison's death and his procurement of a warrant for appellant's arrest on the morning of January 20, 1982. The statements were not admissible as substantive proof of the matters asserted therein. See *Momon v. State,* 249 Ga. 865 (294 SE2d 482) (1982); *Anderson v. State,* 247 Ga. 397 (276 SE2d 603) (1981). We note that the events described by Detective Freeman in his testimony were later corroborated by other prosecution witnesses and, to some extent, by the defendant himself. We find no error.

Appellant also objects to testimony by neighbors of Mrs. Harrison relating conversations with the victim in which Mrs. Harrison told them that she was afraid of appellant because he had threatened her on several occasions. Audrey Symington testified that on the night of the shooting she called the police upon seeing appellant at the victim's house because she "knew there had been problems" between appellant and the victim, and because Mrs. Harrison had told her that appellant had threatened her several times. Counsel for appellant made no objection to this testimony as it explained her conduct in calling the police. During rebuttal, the state offered the testimony of another neighbor, Mrs. Gee, who stated over objection by defense counsel that the victim told her she was afraid appellant would kill her by pushing her down the basement steps in her house.

Counsel's failure to object to Mrs. Symington's testimony constituted a procedural default which bars appellant from raising this issue on appeal. See *State v. Williamson,* 247 Ga. 685 (279 SE2d 203) (1981). As to Mrs. Gee's statement, this evidence was cumulative in nature. In light of the overwhelming evidence of appellant's guilt introduced at trial, we find it highly probable that the testimony did not contribute to the verdict. Based upon the facts in this case any error was harmless. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

5. Appellant contends that the introduction into evidence of photographs depicting the victim's bullet wounds was error on the

grounds that the relevance of the photographs was outweighed by their prejudicial and inflammatory effect on the jurors. This court has often held that photographs depicting the nature and extent of the victim's wounds, the location of the body, the crime scene, and victim's identity are admissible. *Blankenship v. State,* 247 Ga. 590, 595 (277 SE2d 505) (1981); *Moses v. State,* 245 Ga. 180, 187 (263 SE2d 916) (1980). Here the photographs were not cumulative and were relevant to show the location of the victim's gunshot wounds in an attempt to rebut appellant's theory that the wounds were self-inflicted. We find no error.

6. On cross-examination appellant testified that he had never owned a gun and specifically denied ever shooting a gun at anyone. Following this testimony appellant's ex-wife Nanna Faye Taylor took the stand. She testified that on two occasions in the early 1960's, appellant fired a gun at her while drunk. Appellant objects to this testimony on the grounds that the incidents described by Mrs. Taylor happened too long ago to have any probative value in his trial for murder. We hold that the testimony was properly admitted for impeachment purposes. "A witness may be impeached by disproving the facts testified to by him." Code Ann. § 38-1802. See *Mitchell v. State,* 158 Ga. App. 628, 629 (281 SE2d 260) (1981). Mrs. Taylor's statements were relevant to impeach appellant's prior testimony concerning his ownership and use of guns. This enumeration of error is without merit.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., who concurs in the judgment only, and Hill, C. J., Clarke, Gregory and Weltner, JJ., who concur specially.*

DECIDED DECEMBER 3, 1982.

*Steinberg & Vrono, Charles J. Vrono,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

WELTNER, Justice, concurring specially.

I respectfully disagree with the majority's assessment of the testimony of Detective Freeman, as treated in Division 4 of the opinion. In *Momon v. State,* supra, we came finally to grips with the vexatious implications of Code Ann. § 38-302, and adopted the following rule: "When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information,

conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. [Cits.] But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc., on which he or she acted shall not be admissible under Code Ann. § 38-302." 249 Ga. at 867.

In that case, we found that the conduct and motives of the police officers were not relevant to the issues on trial, hence, statements made to them by a deceased witness were not admissible under Code Ann. § 38-302.

In this case, we are presented with precisely the same factual circumstance. The conduct and motives of Detective Freeman in obtaining a warrant are not "matters concerning which the truth must be found." They are not "relevant to the issues on trial." Thus, statements made to Detective Freeman by others upon which he acted in obtaining a warrant are hearsay, inadmissible under Code Ann. § 38-302.

I agree with the majority that his testimony was later corroborated by other prosecution witnesses, and to some extent by Gaskins himself, and for that reason, would find the admission of the questioned testimony to be harmless error. *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976).

I am authorized to state that Chief Justice Hill, Justice Clarke and Justice Gregory join me in this special concurrence.