### 68385. BROWNLEE v. THE STATE.
### 68592. DONOHOE v. THE STATE.
(325 SE2d 815)

POPE, Judge.

Appellants Brownlee and Donohoe, along with co-defendants Jones, Llewellyn, and Gaddis, were indicted in two counts alleging they violated the Georgia Controlled Substances Act by participating in the delivery, distribution and dispersal of more than one ounce of marijuana. Gaddis pled guilty and the remaining defendants proceeded to trial. Llewellyn and Jones were acquitted of all charges; Brownlee and Donohoe were found guilty by the jury on both counts and appeal their convictions and sentences.

1. Both appellants contend that they were entitled to directed verdicts of acquittal. Construed in the light most favorable to the verdict, the evidence presented by the State showed that the Warden of the Ware Correctional Institution received information from a confidential informant that drugs were to be brought into the institution in the next few days by an individual posing as a law enforcement officer, who would be visiting one of the inmates. The Warden found that an "investigator" was coming from Atlanta to "interview" inmate Llewellyn on January 5, 1983. The Warden then set up a law enforcement surveillance team consisting of three officers to monitor the comings and goings at the institution that day. The officers observed a car with a Fulton County license tag arrive just before 11:00 a.m.; appellant Brownlee was driving and appellant Donohoe was the only passenger. While appellants were meeting with inmate Llewellyn in the institution, inmate Gaddis, who had been washing a car in the parking area, went to the Fulton County vehicle, opened the door on the passenger side and looked around the car. He then went into the institution and returned with a cooler belonging to inmate Llewellyn, which he placed inside the car. Gaddis motioned to inmate Jones, who came over and stood in front of a window so as to block the view of anyone looking out at the parking lot while Gaddis removed a black plastic bag from the back seat of the car and placed it in a bucket, covering it with rags. When Gaddis began walking away with the bucket, he was arrested by the surveillance agents. Brownlee, Donohoe, Llewellyn, and Jones were subsequently arrested. Llewellyn told the law enforcement officers that Brownlee and Donohoe were employees of his company, the Atlanta Locker Room, where Brownlee was a security guard and Donohoe was an accountant, and that they had come to discuss business. Brownlee stated during interrogation

that he was a full-time nonpaid deputy sheriff of Fulton County and also a private investigator for an investigative company in DeKalb County. The owner of that company testified that, while Brownlee had been employed by him from May 11 until May 16, 1980, he was not employed as a private investigator on the date in question. The plastic bag removed by Gaddis from the car occupied by appellants was found to contain 7-½ ounces of marijuana and 29 capsules of ethchlorvynol.

Other than the fact that the drugs were transported to the institution in the automobile occupied by appellants, there was no showing of actual possession or actual distribution. However, we believe that this evidence was sufficient to support the jury verdict finding that appellants, acting in concert with Gaddis, did transport the drugs to the institution and remove them from the car for distribution as planned, even though "[t]he evidence was all circumstantial. If separated, and divided into segments, no one segment would be sufficient to convict. But when added together, as a whole it is sufficient to warrant a conviction, and it excludes every other reasonable hypothesis save that of guilt of [those] accused. [Cits.] In such cases it is not necessary that the circumstances remove every possibility of the [appellants'] innocence. [Cits.]" *Huncke v. State*, 137 Ga. App. 299, 301 (223 SE2d 492) (1976). Accord *Barnes v. State*, 168 Ga. App. 925 (1) (310 SE2d 777) (1983).

An "equal access" defense is unavailable here. "The rule, as it applies in the automobile context, is merely that evidence showing that a person or persons other than the owner or driver of the automobile had equal access to contraband found in the automobile may or will, depending upon the strength of the evidence, overcome the presumption that the contraband was in the exclusive possession of the owner or driver. [Cits.] The rule, conceptually and historically, has no application where, as here, all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband. [Cits.] . . . By showing circumstantially that [both of the appellants] had equal access to the drugs, the [S]tate was able to support its theory that [they] were parties to the crime and thus guilty of joint constructive possession of the drugs. [Cits.]" *Castillo v. State*, 166 Ga. App. 817 (2) (305 SE2d 629) (1983). The evidence met the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and the trial court did not err in denying appellants' motions for directed verdict or for new trial. Accord *Ledesma v. State*, 251 Ga. 885 (1) (311 SE2d 427) (1984); *Barnes v. State*, supra.

2. Brownlee contends that the court erred in allowing into evidence the substance of the hearsay statement made by the confidential informant to the Warden. The rule enunciated by the Supreme

Court in *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), is therefore controlling: "When in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. [Cits.] But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc. on which he or she acted shall not be admissible under [OCGA § 24-3-2] . . ." See also *Gaskins v. State*, 250 Ga. 386 (4) (297 SE2d 729) (1982). As further explained by the Supreme Court in *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984), "only in rare instances will the 'conduct' of an investigating officer need to be 'explained,' as in practically every case, the motive, intent, or state of mind of such an officer will not be 'matters concerning which the truth must be found.' At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something."

The evidence in question fits within the definition of OCGA § 24-3-2, and is one of the "rare instances" in which the conduct of an investigating officer needs to be explained. The conduct of the Warden in calling in an outside agency, the GBI, differs markedly from the testimony of conduct in *Gaskins v. State*, supra, and *Momon v. State*, supra. Therefore, this situation does not violate the rule so firmly set out in *Teague v. State*, supra.

Further, we do not see the harm in this testimony, even if its admission were deemed error. Brownlee asserts that he does not complain that it was error to allow the Warden to testify that he had been confidentially informed that drugs were to be smuggled into the prison, but only that the informant told him that the smuggler would act as or be a law enforcement officer from Atlanta. There was no objection to the Warden's testimony that after he talked with the informant, he checked with his deputy warden about the identity of scheduled visitors and found that inmate Llewellyn was scheduled to have a visit from an investigator, and that at that point, he contacted the GBI to set up surveillance. In this context, the admission of the testimony of which Brownlee complains is cumulative and harmless. The jury had ample information from which to infer that the informant must have identified the smuggler as some type of law enforcement officer. Therefore, any error would not be harmful under the standard set out in *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). In view of the limiting instructions given to the jury in regard to the testimony, and in the totality of the evidence, we cannot find it highly probable that this testimony contributed to the judgment.

*Judgment affirmed in Case No. 68385. McMurray, C. J., Deen, P. J., Banke, P. J., and Beasley, J., concur. Sognier, J., concurs in the judgment only. Birdsong, P. J., Carley and Benham, JJ., dissent. Judgment affirmed in Case No. 68592. All the Judges concur.*

DECIDED DECEMBER 5, 1984 —
REHEARINGS DENIED DECEMBER 19, 1984 AND DECEMBER 20, 1984 —

*Theodore S. Worozbyt, William A. Morrison,* for appellant (case no. 68385).

*Frank J. Petrella,* for appellant (case no. 68592).

*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assistant District Attorney,* for appellee.

BENHAM, Judge, dissenting.

Although I concur with what is said in Division 1 of the majority opinion and with the affirmance of Donohoe's conviction (Case No. 68592), I cannot agree with the holdings in Division 2 of the majority opinion or with the affirmance of Brownlee's conviction. For that reason I must respectfully dissent in Case No. 68385.

My disagreement is not with the law cited by the majority but with the application of the facts to that law and the holding that this is one of those " 'rare instances' in which the conduct of an investigating officer needs to be explained." In my view, the fact that the warden's conduct in calling in an outside agency is different from the conduct involved in *Gaskins v. State,* 250 Ga. 386 (4) (297 SE2d 729) (1982), and *Momon v. State,* 249 Ga. 865 (294 SE2d 482) (1982), is not determinative of the issue. Each case will have different facts and those facts need to be applied to the rule set out in *Teague v. State,* 252 Ga. 534 (314 SE2d 910) (1984). The majority does not explain why the conduct of the warden was a matter concerning which the truth must be found by the jury, and I do not believe an adequate explanation exists. The warden could have explained his conduct by testifying to the fact that he arranged for surveillance by an outside agency because of a tip from an informant. The recitation of the content of the tip was gratuitous. For that reason, I believe the warden's testimony was inadmissible under the rule in *Teague,* supra, and its admission was error.

I must also disagree with the majority's conclusion that the admission of the testimony was harmless. The statement in regard to the smuggling of drugs by a person posing as a law enforcement officer goes directly to the issue on trial and the identification of Brownlee as a perpetrator. The prejudicial effect was exacerbated by the emphasis placed upon the hearsay statements in the State's clos-

ing argument (see *Goodman v. State*, 167 Ga. App. 378 (1) (306 SE2d 417) (1983)), and by the circumstantial nature of the evidence, which was sufficient only when taken as a whole, as is recognized by the majority in the first division of its opinion.

Accordingly, although I concur in the affirmance in Case No. 68592, I must respectfully dissent from the affirmance in Case No. 68385.

I am authorized to state that Presiding Judge Birdsong and Judge Carley join in this dissent.