69052. DIXON v. THE STATE.
(325 SE2d 893)

BIRDSONG, Presiding Judge.

This robbery by force conviction is reversed and a new trial granted because the trial court in three instances allowed, over objection, the hearsay testimony of investigators concerning incriminatory information received by them from third persons. We have examined

the evidence in light of the decision of *Teague v. State*, 252 Ga. 534 (314 SE2d 910), and do not find the illegal evidence was cumulative, nor can we say that it was highly probable the errors did not contribute to the judgment so as to render them harmless beyond a reasonable doubt. *Teague*, supra; *Johnson v. State*, 238 Ga. 59 (230 SE2d 869).

The appellant Charles Willis Dixon was accused with Alonso Keith Scott of beating Tony Falotico in his jewelry store while stealing more than $4,000 in gold chains. The robbery occurred July 5, 1983. Mr. Falotico identified Dixon in court in March 1984, saying that Dixon had worn a dark tank-top shirt in the robbery and that Dixon's physique (with very big shoulders and arms, small waist and small head and small scar on one shoulder) was one he would not forget, and "you don't forget the way a man looks at you when he's knocking the heck out of you." Mr. Falotico identified Dixon in a police photo book in December 1983, from a photograph made of Dixon after he had been arrested in Florida and extradicted. Mr. Falotico said he identified Dixon out of a police photo booklet containing eighteen or twenty-four pictures of black men. The police detective testified Mr. Falotico identified Dixon out of a book containing 200 pictures.

Mr. Falotico's sister testified that before the robbery she had been in the store and had observed someone, either herself or another woman, clean the glass countertops with glass cleaner. She saw the robbers but left the store before the robbery occurred; she remembered both robbers wore white tank-top shirts, and one had an unusual physique with broad shoulders and small head, and scarring or stretch marks on his shoulders, and no tattoo. However, she could not positively identify the appellant as one of the robbers.

A police officer testified that Dixon, when arrested in December 1984, had stretch marks on his arms as if from weight lifting, and a very noticeable tattoo on his left arm. Latent and patent fingerprints and handprints were lifted from the jewelry countertops. When Dixon was extradicted from Florida, his prints were taken; a state crime lab expert testified that he had examined thousands and thousands of prints and had never made a mistake in his identifications, that his comparisons in this case proved the prints taken from the jewelry store were Dixon's, and that his opinion in such matters was always 100 percent correct. Dixon denied to the police that he had committed the robbery or was ever in Mr. Falotico's store.

The detective was allowed to testify in explanation of his conduct in arresting Dixon, that about two weeks after the robbery a confidential informant gave him Dixon's nickname, "Chuckie." Another officer testified that an informant told him he saw a subject he knew as Keith Scott and another named Chuckie in a rust-colored Toyota that

belonged to a Thomas Reggie Young. This officer also testified that a Mr. Jernigan at the barber shop said he had seen the two robbery suspects enter a small orange or rust Toyota and take off very fast. The officer questioned Thomas Reggie Young about the automobile; Young said that about 2:30 on July 5, 1983, Keith Scott borrowed his car. Dixon was with Scott, but Scott returned alone. Later that evening, Scott went back to Thomas Reggie Young's house and told Young they had robbed a jewelry store. Young said he later saw Dixon across the street where he had been staying; Dixon was leaving with a suitcase, and bragged to Young about "beating . . . this honky at a jewelry store and robbing him." Thomas Reggie Young also told the officer Dixon's full name, Dixon's family's name, and Dixon's home address in Florida. All of this evidence was related by the police detectives to the jury, as explaining why they arrested Dixon. None of the "informants" testified; Mr. Jernigan at the barber shop did not testify; Thomas Reggie Young did not testify because he could not be found although there had been an arrest warrant out for him for two weeks.

On appeal we do not weigh the evidence, but afford the jury verdict every available presumption of correctness. See *Ridley v. State*, 236 Ga. 147, 149 (223 SE2d 131); *Powers v. State*, 150 Ga. App. 25 (256 SE2d 637). But where error is committed in the trial of the case in the form of the admission of prejudicial evidence, the verdict cannot carry the same presumption of validity, but the evidence is examined to determine whether the legal evidence is so strong or overwhelming that it is highly probable the illegal evidence did not contribute to the verdict. *Teague,* supra; *Hamilton v. State*, 239 Ga. 72, 77 (235 SE2d 515); *Johnson,* supra; *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133). See also *Cauley v. State*, 130 Ga. App. 278, 288, 290-293 (203 SE2d 239). That the admission of hearsay evidence in this case was wrong is too clearly expressed in *Teague* to bear further explanation here; and *Teague* did no more than reiterate an old, but too often ignored, rule in this state. The conviction in *Teague* was affirmed because the illegal evidence was merely cumulative, and therefore harmless. None of the hearsay evidence in this case was cumulative. Rather, it comprised a considerable amount of new evidence against the defendant; it nearly amounts to an entire offer of proof, and all of it hearsay.

The remaining evidence in the case addressed identification of the appellant as the robber and of the fingerprints in the store as his. While as an appellate court we could affirm a conviction on the basis of such evidence alone, it is sheer speculation to assess the weight given by the jury to that evidence in the face of the illegal evidence; the jury was not bound to accept even the fingerprint expert's testimony (*Moses v. State*, 245 Ga. 180 (263 SE2d 916); *Arnold v. State*,

155 Ga. App. 569 (271 SE2d 702)). In this case the illegal hearsay evidence was so strong and so incriminatory, and not cumulative of any legal evidence in the case, that we cannot say it is highly probable the illegal evidence did not affect the verdict (*Johnson*, supra; see *Teague*, supra, p. 537). Although the verdict in *Teague* was upheld, we are satisfied the Supreme Court intended by its clear warning to require adherence to the rule against hearsay rather than to encourage departure. See esp. *Momon v. State*, 249 Ga. 865 (294 SE2d 482). In *Teague*, supra, p. 537, the court said: "We have gone to some length to restate and reaffirm the rule of *Momon*. While the failure to apply that rule does not here result in reversal, violation in another case may be fatal to conviction, as in *Goodman v. State*, [167 Ga. App. 378 (306 SE2d 417)]. Prosecutors and trial judges would be well advised to walk wide of error in the proffer and admission of evidence under the provisions of OCGA § 24-3-2 (Code Ann. § 38-302)."

In this case as in *Goodman*, "the state was permitted, over objection, to prove a substantial portion [of its case] by the use of the hearsay testimony of investigating police officers." (*Teague*, supra.) Each case is still adjudged on its own merits, and prosecutors and trial judges would still be wise to "walk wide of error" in these cases.

*Judgment reversed. Carley and Beasley, JJ., concur.*

DECIDED JANUARY 15, 1985.

*Jim L. Wilson*, for appellant.
*David E. Perry, District Attorney, Leonard M. Geldon, Assistant District Attorney*, for appellee.