### 70626. HALL v. THE STATE.
(336 SE2d 604)

POPE, Judge.

After a trial by jury, appellant Hall and his co-defendant Scott were convicted of violating the Georgia Controlled Substances Act by trafficking in cocaine. See OCGA § 16-13-31 (a) (1).

1. Appellant Hall raises the general grounds. Construing the evidence in a light favorable to the jury's verdict, the jury was authorized to find the following facts: On March 17, 1982 Agent Shields of the Georgia Bureau of Investigation, acting in an undercover capacity, contacted one known to him as Willie "Sonny" Anderson to arrange Shields' purchase of two ounces of cocaine. Sonny was unaware that Shields was a law enforcement officer. Negotiations for the purchase took place by telephone with Sonny acting as the mediator between the then unidentified seller and Shields. At 8:30 p.m. Sonny informed Shields by telephone that the price would be $3,700. Arrangements were made to meet in front of Sonny's apartment located on Riverdale Road in Clayton County. Shields, accompanied by Detective Byrd, arrived at Sonny's apartment at about 9:30 p.m., parked in front of it, and met with Sonny. The officers remained in their car the entire time. At approximately 10:45 p.m. a person known as Randy, a/k/a Charlie Brown, exited Sonny's apartment and informed Sonny

that the seller of the cocaine was on the telephone. Sonny and Randy then returned to the apartment. After five minutes or so Sonny came back to the officers' car and informed them that the subjects were en route. Sonny returned to his apartment, but Randy waited in the car with the officers. At approximately 11:25 p.m. Sonny came back to the officers' car from his apartment telling them that the subjects with the cocaine were at a phone booth around the corner and wanted instructions for the exchange of the money for the cocaine. Shields told Sonny to stick to the original plan for exchanging in front of the apartment. Sonny told Randy to walk to the phone booth to relay this information to the subjects with the cocaine. The officers saw Randy walk away around the apartment and out of sight.

Approximately ten minutes later, a white pickup truck entered the parking lot stopping somewhat behind the officers' car which was parked in front of Sonny's apartment. The truck was driven by its owner, co-defendant Scott, and appellant rode in the passenger seat. Appellant alighted from the truck carrying cupped in his hand a small plastic bag containing a white or bright powdery substance. He entered the apartment with Sonny and both exited some five minutes later. Appellant returned to the truck and Sonny joined the officers in their car. The truck moved to a parking space approximately 200 yards away. Upon Sonny's instructions the officers followed, parking beside the truck. Shields held up $4,000 in cash to show Scott and appellant, whereupon appellant gave Shields a "funny look" like he recognized him, said something unintelligible to Scott who put the truck in reverse and then drove away. The officers followed the truck, assisted also by one agent who had been involved in the surveillance of the deal. Two other officers followed on foot. The truck pulled in at a nearby Gulf Service Station where appellant exited the car, walked toward the officers and was arrested. A telephone booth was located on the premises of the station. On the seat of the truck, between the driver's and passenger's side, the officers saw a hat laying on its top with two small plastic bags of white powder inside it. Lying next to the hat was a Curad bandage box containing a larger clear plastic bag containing white powder. The white powder substance in all those plastic bags was proven to be cocaine, with a total weight of 64.2 grams (approximately 2-¼ ounces). Although in conflict, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the offense charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *White v. State*, 174 Ga. App. 699 (2) (331 SE2d 72) (1985).

2. Appellant contends that the trial court erred in allowing Shields to testify concerning a vehicle found at the Gulf station which was determined to belong to appellant. Through a series of questions asked of Shields on cross-examination *by co-defendant Scott's coun-*

*sel,* testimony was elicited to show the following: "Q. Did you at the location make any investigation of any other automobiles that was [sic] there at the Gulf Station or any other truck that night? A. Yes, we did. Q. Did you find a vehicle that you determined belonged to Mr. Hall? A. Yes. Q. So that Mr. Hall had a vehicle at that Gulf Station, didn't he? A. Yes, he did. Q. What kind of vehicle was it, sir? A. It was a Mustang. . . ." No objection was raised until the following exchange: "Q. I'd like to inquire how you determined it was Mr. Hall's vehicle? A. By talking to the people up there at the service station." Counsel for appellant then objected, claiming that the answer constituted hearsay. The trial court overruled the objection and further cross-examination showed that, based upon Shield's determination that the car belonged to appellant, he ordered the car impounded. Evidence was also presented to show that after Scott and appellant were arrested, Scott's truck was driven away from the Gulf station and across the street. After a short period of time, the truck was returned to the Gulf station. There was some testimony to the effect that the law enforcement authorities anticipated another "drug bust" at the same location, the Gulf station, later that same night.

"Hearsay is defined in Georgia as evidence 'which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons.' OCGA § 24-3-1." *Faircloth v. State,* 253 Ga. 67, 69 (316 SE2d 457) (1984). However, "[w]hen, in a legal investigation, information, conversations, . . . and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." OCGA § 24-3-2. In *Teague v. State,* 252 Ga. 534, 535 (314 SE2d 910) (1984), the Supreme Court explained OCGA § 24-3-2 by enunciation of the following rule: "When, in a legal investigation, the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), then information, conversations, . . . and similar evidence known to the actor are admissible to explain the actor's conduct. [Cits.] But where the conduct and motives of the actor are not matters concerning which the truth must be found (i.e., are irrelevant to the issues on trial) then the information, etc. on which he or she acted shall not be admissible under [OCGA § 24-3-2]. . . ." As further explained by the Supreme Court in *Teague,* "only in rare instances will the 'conduct' of an investigating officer need to be 'explained,' as in practically every case, the motive, intent, or state of mind of such an officer will not be 'matters concerning which the truth must be found.' At heart, a criminal prosecution is designed to find the truth of what a defendant did and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something." Id. at 536.

"The evidence in question fits within the definition of OCGA § 24-3-2, and is one of the 'rare instances' in which the conduct of an investigating officer needs to be explained." *Brownlee v. State*, 173 Ga. App. 138, 140 (325 SE2d 815) (1984). First, it is essential to remember that the testimony at issue was elicited from Shields by Scott's counsel on cross-examination. No testimony regarding the Mustang had been elicited at all on direct examination of Shields. Scott's defense at trial was that he had a complete lack of knowledge and involvement with the contraband found in his truck. He was unaware of the presence of cocaine in his truck before or at the time of his arrest. At trial he sought to raise the possibility that during the time his truck was in the possession of the officers, the cocaine was placed inside it. In apparent support of this theory, he showed that the Mustang was also impounded but no cocaine or other contraband was found. We note that the record is devoid of any motion for severance of trials made by appellant either before or during the trial. Any prejudice to appellant's credibility occasioned by the portion of Shields' testimony on cross-examination enumerated as error herein resulted from questioning by Scott's counsel in search of some support for his own defense and not from questioning by the State. We find no basis for reversal raised in this enumeration of error.

3. Appellant enumerates as error the following portion of the trial court's charge to the jury: "That a witness is unworthy of belief and the testimony thus discredited may be established by disproving the facts testified to by the witness or proof of contradictory statements previously made by the witness on matters relative to the witness' testimony in the case [or] *by proof of a witness' conviction of a felony* or by evidence as to a witness' general bad character." (Emphasis supplied.) Appellant's objection at trial was based upon his claim that the charge was not adjusted to the facts in that no convictions of the parties defendant had been shown.

Appellant is correct that the evidence adduced at trial does not support inclusion of the charge at issue. However, "[a]lthough a portion of the court's charge was not based on the evidence and was surplusage, an erroneous charge touching a theory not in issue under the evidence, unless prejudicial and harmful as revealed by the record, does not require or demand a reversal." *Jones v. State*, 171 Ga. App. 184, 187 (319 SE2d 18) (1984). On appeal, appellant asserts that the charge was prejudicial and harmful to him because, although no mention or question of previous convictions was made regarding appellant, his co-defendant Scott testified that he had no prior conviction and had never been in trouble with the police. Appellant further claims that the charge could only have been understood by the jury to apply to him because no other witnesses testified except law enforcement officers. This is incorrect as Scott called four character witnesses

who were not law enforcement officers. Appellant was, thus, not the only witness who did not testify as to the absence of prior convictions. "We do not find the charge prejudicial or harmful under the evidence presented, and this enumeration of error is without merit." *Davis v. State*, 167 Ga. App. 701, 702 (307 SE2d 272) (1983).

4. In his remaining enumeration of error, appellant asserts that the trial court erred in denying his motion for mistrial based upon his claim that the denial of his motion for a *Jackson-Denno* hearing was error. However, appellant objected and asked for a *Jackson-Denno* hearing *after* testimony was already in and unobjected to that the agent interviewed both defendants on March 18, 1982; that he interviewed appellant about 3:15 a.m. at the Riverdale Police Department; that prior to the interview another agent advised appellant of the *Miranda* rights by reading a *Miranda* card to him. When the agent began to specifically enumerate the rights advised and after he had stated the first one, the objection and request were made. After argument and overruling of the objection, the only further testimony was a recitation of the balance of the rights read. Then, when the State indicated it intended to offer a statement, the *Jackson-Denno* hearing was held out of the jury's presence. The court ruled the statement inadmissible not because it was involuntary but because it was not incriminatory and would simply serve to show that appellant exercised his right to counsel before making a further statement. When the jury returned, no attention was called to what had transpired and the examination proceeded along other lines. In final charge the court instructed the jury that a defendant is not compelled to give evidence for or against himself.

There was no violation of appellant's claimed rights. See *Schneider v. State*, 130 Ga. App. 3 (202 SE2d 238) (1973). As stated succinctly in *Pierce v. State*, 238 Ga. 126, 128 (231 SE2d 744) (1977): "It is now axiomatic that the defendant has the right to a hearing outside the presence of the jury on the question of the voluntariness of any in-custody statements or confessions that he has made. *Jackson v. Denno*, 378 U. S. 368 [(84 SC 1774, 12 LE2d 908)] (1964)." The issue is voluntariness. That is what preliminarily must be decided by the court, which must offer the defendant a hearing on the issue where the State seeks to introduce a statement in evidence. *Schneider*, supra at 5. Here the offer did not have to be made because appellant requested such a hearing, and it was conducted before the point at which the jury would learn of the statement's contents. That is what the law requires.

In this case appellant asked for a hearing earlier than he had a right to one, but he cannot complain of any harmful error in not having one at that juncture because the subject that a statement had been made by appellant had already been testified to without objec-

tion. The only additional evidence between his request and the hearing was the recitation of *Miranda* rights which had been given to appellant by an officer on March 18. The objection to the foundation evidence was too late to give appellant a firm basis for his current complaint.

In order to avoid even a question as to any effect of the preliminary and foundation-laying evidence on the jury, that is, the testimony that there *was* a statement, we urge that the *Jackson-Denno* hearing be held before the subject of a statement is brought to light before the jury at all. Thus, as suggested by Judge Daniel, "the prosecuting attorney, in order to avoid possible error, should ask the trial court, out of the presence of the jury, for a *Jackson-Denno* hearing before attempting to introduce a confession in evidence." Daniel, Ga. Crim. Trial Prac., § 20-19, at 513 (1984 ed.). Although specifically addressed to the introduction of a confession, Judge Daniel's suggestion is well-taken. The legal distinction between a confession and statement may not be readily apparent to a jury. In circumstances where it ultimately is ruled inadmissible, as here, the jury may be left guessing. An aborted attempt to introduce a statement may leave *some* impression on the jury when it knows some kind of statement was made. Whether the incomplete impression is favorable or unfavorable to the defendant is hard to tell. Although this presents no basis for reversal in this case, the better practice is to hold the *Jackson-Denno* hearing before the mention of a statement.

*Judgment affirmed. Deen, P. J., and Beasley J., concur.*

DECIDED OCTOBER 21, 1985.

*William V. Hall, Jr., Horace W. Roberts*, for appellant.
*Robert E. Keller, District Attorney, David C. Marshall, Assistant District Attorney*, for appellee.