## S07A0770. JUDKINS v. THE STATE.
### (652 SE2d 537)

MELTON, Justice.

Following a jury trial, Edward Earl Judkins was convicted of the malice murder of Gordon Edward Petty; armed robbery; kidnapping of Petty; arson in the third degree; burglary; and possession of a firearm during the commission of a crime.[1] Judkins contends on appeal that the evidence was insufficient to support the verdict, that his trial counsel was ineffective, and that the trial court erred with respect to several evidentiary rulings. We affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, until October 2000, Judkins was employed at McDonald's along with Curtiss Woodyard and David Littlejohn. On the morning of November 27, 2000, Judkins went to Woodyard's home and asked Woodyard to help him rob Holiday Market, a convenience store. Judkins wore a mask and armed himself with a .9mm pistol while Woodyard carried a 20-gauge shotgun belonging to Judkins. Woodyard went inside to "case" the store and then rejoined Judkins outside of the building. As the two men prepared, Petty, the only store clerk at the Holiday Market during the early morning hours, came around the corner of the building. Judkins pointed his pistol at Petty's head and ordered Woodyard to lead Petty into a nearby wooded area. Though Petty pleaded for his life, Woodyard shot him in the back of the head at Judkins' insistence and under the threat of being shot himself by Judkins. Judkins returned to the store, pried open the cash register, and stole $13.00. Judkins then broke into the store office to destroy the surveillance video. Unable to retrieve the video, he called for Woodyard to bring the shotgun. Judkins fired the gun into the video recorder to no avail. Judkins then obtained several bottles of a gasoline additive from the store, doused the recorder, and

---

[1] On November 12, 2002, Judkins was indicted for malice murder, armed robbery, kidnapping, arson in the third degree, burglary, and possession of a firearm during the commission of a crime. Judkins was found guilty on all counts on May 19, 2005. On June 1, 2005, Judkins was sentenced to life for the malice murder; and consecutive sentences of (1) life for the armed robbery; (2) twenty years each for kidnapping and burglary; (3) ten years for arson; and (4) five years for possession of a firearm during the commission of a crime. Judkins filed a motion for new trial on June 2, 2005. On October 24, 2006, the motion was denied. Judkins' timely appeal was docketed in this Court on February 8, 2007, and submitted for decision on the briefs.

ignited it. The next day, Judkins delivered the shotgun to Woodyard, which Woodyard gave to Jarvis Washington.

In addition, similar transaction evidence showed that, on December 28, 2000, Judkins went to Woodyard's home in the early morning to retrieve Littlejohn. The two men proceeded to McDonald's, where they intercepted a store manager, Tamesha Williams. Wearing a mask and armed with a .9mm handgun, Judkins entered Williams' vehicle along with Littlejohn and directed Williams to drive down the street. He ordered her to exit the vehicle, but then changed his mind, returned for and retrieved Williams, and drove back to McDonald's. At McDonald's, Judkins hid in the bushes while another manager opened the door for Williams. When the manager attempted to close the door behind Williams, Judkins jammed his foot in the doorway, preventing the manager from closing the door, and attempted to force his way into the McDonald's. Although Judkins was wearing a mask, the manager at the door recognized Judkins as her former McDonald's employee. The manager was able to prevent Judkins from entering, and noticed that Judkins had a handgun. The manager called 911, and Judkins left the scene.

In response to this call, officers went to Judkins' apartment, searched his residence after obtaining consent, and discovered a box containing two 20-gauge shotgun shells but no corresponding weapon. During subsequent questioning, Judkins stated that he had given the shotgun to Woodyard and that Woodyard had confessed to using the gun to shoot the victim in the Holiday Market crimes. Judkins also admitted to participating in the crimes at McDonald's and entered guilty pleas to armed robbery and kidnapping in connection with that incident.

Thereafter, police investigated Woodyard, who implicated Judkins as a participant in the robbery of the Holiday Market and the murder of Petty. A week later, Woodyard recanted and claimed that he was the only one involved in the robbery and murder of Petty. However, Woodyard incorrectly claimed that transmission fluid, rather than a gasoline additive, was used to ignite the Holiday Market fire.

The evidence was sufficient to enable a rational trier of fact to find Judkins guilty of all the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also OCGA § 16-2-20 (parties to a crime). To the extent that Judkins contends that the evidence was insufficient because the testimony of his accomplice, Woodyard, was uncorroborated, such contention is without merit. "Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict . . . [and] [t]he sufficiency of the corroborating evidence is for the trier of

fact to decide." (Citations and punctuation omitted.) *Baines v. State*, 276 Ga. 117, 119 (1) (575 SE2d 495) (2003). Woodyard's testimony was corroborated by (1) Judkins' admission that he owned the shotgun that was used in the Holiday Market shooting, (2) his admission to police that he had given the shotgun to Woodyard, (3) Jarvis Washington's testimony that Woodyard had in fact given him the shotgun after the Holiday Market robbery, and (4) the fact that the shotgun shells found in Judkins' home matched the shells taken from Petty's body. Id.

2. Judkins argues that the trial court erred by admitting into evidence the shotgun shells seized in the warrantless search of his apartment. The record reflects that two years prior to trial, Judkins filed a preliminary motion to suppress "all physical evidence seized in violation of [his] Fourth or Fifth Amendment rights," and that he planned to "supplement" this motion "when more facts bec[a]me known." However, there is no record of any supplemental motion being filed, any hearing being held on the original motion to suppress, or any ruling being made to dispose of the motion. Moreover, Judkins failed to object at trial when the shotgun shells were admitted into evidence. Under these circumstances, Judkins has waived review of this issue on appeal. *Castillo v. State*, 281 Ga. 579 (2) (642 SE2d 8) (2007).

In any event, the record reveals that Judkins signed a consent form authorizing the search of his apartment, and that he did not contest the voluntariness of this consent below. This obviated the need for a search warrant. See, e.g., *Crowe v. State*, 265 Ga. 582 (6) (458 SE2d 799) (1995).

3. Judkins claims that the trial court erred in admitting into evidence the similar transaction testimony relating to the McDonald's attempted robbery. Similar transaction evidence is admissible where (1) it is introduced for a proper purpose, (2) sufficient evidence shows that the accused committed the independent offense, and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991). Judkins does not challenge the first two factors of the admissibility test for similar transaction evidence, but instead contends that the McDonald's crime was not similar enough to the Holiday Market crime to be admissible. However, "[a] transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences." (Citations and punctuation omitted.) *Collum v. State*, 281 Ga. 719, 723 (4) (642 SE2d 640) (2007). Moreover, "[w]here, as here, such evidence is admitted for the purpose of showing bent of mind, a lesser degree of similarity is required

than if introduced to prove identity. [Cit.]" Id. Here, in both the McDonald's and the Holiday Market crimes, (1) Judkins recruited another individual from Woodyard's house to assist him in committing the crimes; (2) Judkins wore a mask to conceal his identity; (3) Judkins carried a .9mm pistol; and (4) Judkins committed the crimes early in the morning. The trial court did not clearly err in admitting evidence of the McDonald's crime as a similar transaction. *Smith v. State*, 273 Ga. 356 (2) (541 SE2d 362) (2001).

4. Judkins contends that the trial court erred by holding an "untimely" *Jackson v. Denno* hearing regarding the admissibility of his statement to police. He specifically argues that the trial court erred by holding a hearing on the admissibility of the statement after the State, during its opening argument, had already referred to Judkins' conversation with police. Although the better practice would have been for the trial court to conduct a *Jackson v. Denno* hearing before the jury heard any reference to Judkins' statement (see *Hall v. State*, 176 Ga. App. 498 (4) (336 SE2d 604) (1985)), we find no reversible error. See id. Before Judkins' statement was actually introduced into evidence, an appropriate *Jackson v. Denno* hearing was held and the statement was found to be voluntary and admissible. We find that Judkins has not shown that any harm resulted from the timing of the *Jackson v. Denno* hearing here.

5. Judkins claims that he received ineffective assistance of counsel because his attorney failed to object to (a) the admission into evidence of the shotgun shells that were seized in connection with a warrantless search, (b) the admission of certain aspects of the McDonald's similar transaction evidence, and (c) the uncorroborated testimony of Woodyard. He also claims that his counsel was ineffective for failing to consult him "on important issues." In order to succeed on a claim of ineffective assistance, Judkins must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

With respect to the missed objections, as shown in Divisions 1-3, supra, such objections from counsel would have been fruitless. Therefore, these missed objections provide no basis for a finding of ineffective assistance of counsel. *Jones v. State*, 280 Ga. 205 (2) (a) (625 SE2d

1) (2006).[2] As for the "important issues" that Judkins' counsel allegedly did not consult him on, Judkins makes no mention in his brief as to what specific issues, if any, his counsel did not discuss with him, and neither Judkins nor his trial counsel testified at the motion for new trial hearing to shed any light on what they may have discussed. Judkins has failed to present any evidence to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance (*Rivers v. State*, 271 Ga. 115 (2) (516 SE2d 525) (1999)), and his claim of ineffective assistance is therefore without merit. See, e.g., *Garrett v. State*, 276 Ga. 556 (2) (b) (580 SE2d 236) (2003).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 29, 2007.

*Sherry T. Barnes*, for appellant.

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.

---

[2] The alleged failure to object to the "uncorroborated" testimony of Woodyard is also belied by the record, as trial counsel did move for a directed verdict of acquittal, claiming that the evidence presented was insufficient to sustain Judkins' convictions because the State's case was "entirely based on the statements of Mr. Woodyard." See OCGA § 24-4-8 (In "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient [to establish a fact]. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness").