## 38847. WILLIAMS v. THE STATE.

HILL, Chief Justice.

Defendant was found guilty and sentenced to life imprisonment for the murder of Danny Hansford, a part-time employee and frequent house guest of the defendant. The state introduced evidence of a homosexual relationship between the defendant and the deceased. The defendant claimed he shot the deceased in self-defense, and the state contended that the scene of the murder had been contrived to make the shooting appear to have been self-defense. This shooting occurred on May 2, 1981.

Officer Slaughter of the Savannah Police Department testified that at 2:58 a.m. on May 2, 1981, she received a call from a man identifying himself as Jim Williams and saying he had been involved in a shooting and requesting that the police be sent.

A friend of the defendant testified that the defendant called him between 2:20 and 2:35 a.m. and asked him to come downtown, saying "I just had to shoot Danny." This friend dressed and arrived at the defendant's house at the same time the police arrived.

Corporal M. J. Anderson of the Savannah Police Department testified that when he arrived at the defendant's house within two minutes of receiving a shooting call, the defendant opened the door and said: "I shot him. He's in the other room." In the hall a grandfather clock had been turned over. Corporal Anderson testified that he found Danny Hansford, whom he knew from a prior occasion, lying face down with his right hand above his head with a pistol under his hand. Without moving the victim's right hand, Corporal Anderson checked the pulse in the right arm and found none. The victim was not breathing. At this time the defendant did not appear emotionally upset.

Detective Ragan testified that when he arrived at the scene he found smeared blood on the victim's right wrist and the victim's thumb and fingers on top of the gun. The victim had been shot three times, in the back, above the right ear and in the chest. Bullet holes in the floor corresponded with the shots in the victim's back and head, except that the victim's head was facing to his left. There was blood on the floor under the victim but none in the vicinity of his right hand. The leg of a chair sitting upright was on the victim's pant leg.

A bullet had passed through some papers on the desk, and lead fragments were recovered from a chair behind the desk. On the desk there were paper fragments on top of the gun which had been used by the defendant. Tests of the victim's right hand showed no gun powder

residue. Four shell casings were found at various places in the room.

The state contended that the defendant shot the victim with one gun which he placed on his desk, then shot at his desk and chair with a second gun, and pulled the victim's right hand from under his body and placed the second gun under the victim's hand.

The defendant testified that the deceased lost his temper, threw the defendant against a door, left the room, caused a loud noise in the hall, returned to the room with a gun, and threatened and then shot at the defendant who was seated behind his desk. The defendant testified that he took his gun from his desk and fired three quick shots into the deceased.

The defendant also testified that a month earlier, on April 3, 1981, the deceased went into a rage, broke some furniture and shot a hole in a bedroom floor, and that he called the police. (The state implied in closing argument that this incident may have been contrived in preparation for the fatal shooting.)

Corporal Anderson was recalled to the stand. He had been one of the officers who investigated the April 3 shooting. He testified that Danny Hansford was asleep on the bed when he arrived at the scene on April 3. Out of the presence of the jury he testified that on April 3 he pulled up the bedroom carpet, saw a bullet hole but "couldn't determine if that was a fresh or an old one" and couldn't find the bullet. In the presence of the jury he testified concerning the bullet hole that he "could not determine if that was a new type of gunshot or was an old one."

Defense counsel had received a copy of Corporal Anderson's April 3, 1981, report. Defense counsel had also received a copy of so much of Corporal Anderson's May 2, 1981, report as contained statements made by the defendant. See OCGA § 17-7-210 (Code Ann. § 27-1302). Part of the May 2 report not furnished defense counsel refers to the April 3 incident; it reads as follows: "We did find a fresh gunshot in the floor. . . ."

After closing arguments and before the jury was charged, at a hearing in chambers defense counsel referred to the "freshness" of the bullet hole and inquired of the prosecutor whether there was anything in Corporal Anderson's May 2 report which "would take away from the testimony of Corporal Anderson or that would in any way not support what he had testified to." The prosecutor responded that there was not.

On appeal the defendant enumerates five errors. We deal at length with only one.

Defendant urges that the trial court erred in failing to make the May 2 report available to the defense following its in camera

inspection of that report, and that the state suppressed and failed to provide the defense with exculpatory evidence. We find no error by the court; we do find error by the state.

The case of United States v. Agurs, 427 U. S. 97, 103-105 (96 SC 2392, 2397-2398, 49 LE2d 342, 349-350) (1976), provides the framework for our analysis. There the Supreme Court said: "The rule of *Brady v. Maryland,* 373 U. S. 83, arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution but unknown to the defense.

"In the first situation, typified by *Mooney v. Holohan,* 294 U. S. 103, the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury. In a series of subsequent cases, the Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. . . . In those cases the Court has applied a strict standard of materiality, not just because they involve prosecutorial misconduct, but more importantly because they involve a corruption of the truth-seeking function of the trial process. . . .

"The second situation, illustrated by the *Brady* case itself, is characterized by a pretrial request for specific evidence. In that case defense counsel had requested the extrajudicial statements made by Brady's accomplice, one Boblit. This Court held that the suppression of one of Boblit's statements deprived Brady of due process, noting specifically that the statement had been requested and that it was 'material.' A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." (Footnotes omitted.)

Regarding the third situation referred to by the Court, a general request for *"Brady* material" or "anything exculpatory," or no request at all, the Court held that a prosecutor is under a constitutional duty to disclose, even without request, evidence which creates a reasonable doubt of guilt which did not otherwise exist. 427 U. S. 97, 112-113 (96 SC 2392, 2402, 49 LE2d 342, 354-355).

As for the third situation, we find no error. The April 3 incident is not the incident directly in issue here and it could have been contrived with a "fresh" bullet hole as well as with an "old" one.

As for the second situation, there was no specific item in defendant's Brady motion calling for the May 2 incident report.

There was, however, an oral request, albeit belated, for anything in the May 2 report which would take away from or not support Corporal Anderson's testimony. We need not decide this case solely on the basis of this belated oral request.

As for the first situation, on this record we do not find perjury. Corporal Anderson's May 2 report is not under oath. His trial testimony may or may not have been truthful. However, we do find patent inconsistency. Corporal Anderson's trial testimony is clearly inconsistent with his May 2 report. This witness was a law enforcement officer, the first officer to arrive at and take charge of the scene on May 2.

Under these twin circumstances (that is, a specific oral request, albeit belated, was made to the prosecutor, who assured the court and defense counsel that the report contained nothing which would contradict the officer's testimony, and the report clearly did contradict that testimony), we find that a new trial must be ordered. We do so because we cannot and will not approve corruption of the truth-seeking function of the trial process.

The state urges that the defendant should have done more than he did to protect himself. We find that the state should have done more than it did to protect the defendant's rights.

Inasmuch as this case must be retried, we need not deal at length with defendant's other enumerations of error. As to the exclusion of his testimony as to an attack by Hansford upon a third person in the defendant's presence, see *Golden v. State,* 250 Ga. 428 (297 SE2d 479) (1982). Regarding defendant's hearsay objections, see *Momon v. State,* 249 Ga. 865 (294 SE2d 482) (1982). Regarding the testimony of a state's witness that he had been a homosexual, we find no error.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 4, 1983 —
REHEARING DENIED JANUARY 25, 1983.

*Bobby Lee Cook, John Wright Jones,* for appellant.

*Spencer Lawton Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.