69763. ECHOLS v. THE STATE.
(331 SE2d 619)

POPE, Judge.

James Floyd Echols was indicted and tried for murder but convicted of voluntary manslaughter. The evidence showed that Echols and the victim, George Biggs, had fought shortly before the killing, the victim attacking Echols, knocking him down and beating him. The two were separated and the victim went to a car a short distance away. While the victim was trying to open the door of the car, Echols got his rifle and shot him. Echols was sentenced to serve thirteen years with seven years additional on probation.

1. Echols first enumerates as error the trial court's refusal to al-

low him to testify about his knowledge of a knife attack by the victim upon a third party. Echols was allowed to testify that the victim had a general reputation for violence, in particular, for "cutting" people. However, Echols was not permitted to testify about his knowledge regarding a specific knife attack. Echols argues that this testimony should have been allowed pursuant to OCGA § 24-3-2 to explain his conduct to demonstrate his reasonable fear of the deceased. "As a general rule, the character of a murder victim is irrelevant and inadmissible in the murder trial . . . Proof of violent and turbulent character of the deceased becomes admissible when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the accused was honestly seeking to defend himself. However, it is well established by decisions of this court that general character for violence of the deceased can not be established by specific acts." (Citations and punctuation omitted.) *Henderson v. State*, 234 Ga. 827, 828 (218 SE2d 612) (1975). "The fact that a statement may be properly admitted under OCGA § 24-3-2 . . . does not overcome other objections such as impermissibly placing character in evidence. [Cit.]" *Ivester v. State*, 252 Ga. 333, 335 (313 SE2d 674) (1984). Thus, even were we to agree with Echols that his testimony would be admissible under OCGA § 24-3-2, it would still be improper under the rule recognized in *Henderson*. We find that the trial court did not err in disallowing such testimony.

2. Echols next enumerates as error the trial court's admission of the testimony of Harvey Lee Blackmon. Echols argues that Blackmon made inconsistent statements to the police, and that the State did not make both statements available to him until the second day of trial. These statements were provided to counsel for Echols on the morning of the second day of trial; the trial court ordered that counsel for Echols have an opportunity to interview Blackmon regarding the statements. This was done during a lunch break lasting approximately an hour and a half. When the trial resumed and before Blackmon took the stand, the trial court asked if counsel had had an opportunity to interview Blackmon, and counsel responded that he had. Thereafter, Blackmon testified and counsel for Echols conducted a lengthy and thorough cross-examination of Blackmon going particularly into the inconsistent statements. The statements were inconsistent in that Blackmon at first denied seeing anything and later gave a statement about what he saw and explaining his earlier statement that he saw nothing as a product of fear. Echols cites the case of *Williams v. State*, 250 Ga. 463 (298 SE2d 492) (1983), for authority that Blackmon should not have been allowed to testify. We cannot agree that the holding in *Williams* requires such a finding. In *Williams*, the court found that a specific oral request for any contradictory information in a police report had been made pursuant to *Brady v. Mary-*

*land,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), and that the State knew that the report was contradictory to the officer's testimony and yet assured the trial court and opposing counsel that no such contradiction existed. "Even where the [S]tate may be aware before trial of potential contradictions, a prior contradictory statement of a witness does not become impeaching, i.e., contradictory or exculpatory, until the witness testifies. *Brady* does not require *pretrial* disclosure of the materials. Where, as here, the trial court has conducted an in camera inspection of the prior contradictory statement and determined that it contained no matter which was exculpatory or of significance, and where defense counsel has been permitted adequate cross-examination of the witness, the defendant has not borne his burden of showing prejudice to his case resulting from the prosecution's refusal to turn over the statement." (Citations and punctuation omitted.) *Burney v. State,* 252 Ga. 25, 26-7 (310 SE2d 899) (1984). In the present case, not only was counsel afforded an opportunity to cross-examine Blackmon, he was provided both statements and an opportunity to examine Blackmon before he testified. We find no error in the manner in which the trial court acted.

3. Finally, Echols argues the trial court erred in failing to give his written request to charge regarding defense of habitation. No objection to the court's failure to give this charge was made by counsel for Echols, nor was it reserved. Later, the jury requested a recharge on the law regarding voluntary manslaughter. This was given, and at that time the request on defense of habitation was included. The court cautioned the jury that it was to take the charge as a whole. Echols argues that including this request on the recharge was too little and too late. We cannot agree. Had counsel pointed out to the trial court its initial omission of the charge regarding habitation immediately after the first charge, to correct its error the trial court would have done essentially what it did in the recharge. Therefore, we find no error.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED MAY 7, 1985 —
REHEARING DENIED MAY 23, 1985 —

*G. Hughel Harrison, Samuel H. Harrison,* for appellant.
*W. Bryant Huff, District Attorney, Stephen E. Franzen, Assistant District Attorney,* for appellee.