## A94A0482. WEST v. THE STATE.
(444 SE2d 398)

BIRDSONG, Presiding Judge.

Conrad C. West appeals his conviction for possession of cocaine with intent to distribute.

The State showed that appellant was arrested after a reliable informant, wired with a body bug, sought to purchase cocaine from Conrad West. The informant was himself under indictment for cocaine sale. On February 5, 1993, he notified the East Metro Drug Enforcement Team (EMDET) that he thought he could set up a "buy" with appellant. The same day, the informant was fitted with a radio transmitter. He was not given any money to make a "buy." He walked into a neighborhood where appellant was visiting and met a man named Kenny; both men walked to a house to see appellant. According to the informant, he told appellant he wanted a "$100 piece" of cocaine, so Kenny and appellant drove the informant to a liquor store to cash a check with which to buy the cocaine. They first stopped at a convenience store where the informant says he saw appellant sell cocaine. While the informant was in the liquor store he encountered an EMDET agent, and other EMDET agents known to appellant drove into the parking lot. Kenny and appellant drove off. A lookout was placed on the vehicle and a half hour later, appellant was stopped in his apartment complex by a police officer who knew appellant and knew his license had been suspended. At trial, appellant's probation officer testified that appellant was on intensive probation, one condition being consent to search at any time. A video was made of the arrest. The police officer, after berating appellant at length for allegedly threatening the officer's cousin, reached into appellant's underpants in his crotch area and pulled out $333 cash. He found no drugs. After the probation officer arrived, the police officer performed a sec-

ond search. The officer testified he detected something like soft plastic with his fingertips under appellant's genitals but he did not pull this "something" out because he did not want to strip-search appellant in public. After appellant was in jail, the officer brought to him a bag of cocaine (1.1 grams total powder) which the officer said was stuffed in the back seat of the police car. No drugs were found on appellant. No one other than the informant testified that appellant was seen with drugs.

Appellant defended by saying that the informant, whom he knew slightly, asked for a ride to the liquor store to cash a check. Because appellant's license was suspended, Kenny drove the car. Appellant contended he had $333 on him because he had been paid that day (Friday) and his fiancée gave him money to pay bills. After he and Kenny dropped off the informant at the liquor store, they left. There was no drug deal. Appellant dropped Kenny off and drove home to his apartment complex, where he and his car were searched. His hands were cuffed behind him in the police car; he testified he could not have extracted anything from his pants and hid it in the seat.

West was convicted of possession of cocaine with intent to distribute. He asserts three errors below. *Held*:

1. Appellant contends the trial court erred by permitting the State to withhold exculpatory *Brady* evidence until the trial, to wit, the recording made from the informant's body bug.

The State does not dispute that it told defense counsel the tape was broken and could not be produced. Defense counsel in opening argument told the jury there was a body bug on the informant and that if that tape were available it would show there was no drug transaction. Counsel said: "Ladies and gentlemen, I would love to play the tape, but I can't hear it. Because supposedly this tape is damaged. . . . We can't play the tape for you. . . . We have never had our hands on it." The court interrupted, saying counsel was "arguing the case. . . . [DEFENSE COUNSEL]: That's what I expect the evidence to show, ladies and gentlemen. You will hear that this tape does not work. . . . Otherwise, this case may be over right now."

At trial, a State's witness stated that the tape was not broken. Defense counsel then demanded that it be produced. After a bench conference at which appellant's counsel says she objected to its being played at trial, the tape was played for the jury. In closing argument, the prosecutor characterized the discovery at trial that the tape was not damaged as one of the *defendant's* "broken promises": "[Defense counsel] proposed to you in her opening statement that [the tape] had somehow been damaged. . . . She implied that somehow the State had damaged that evidence. You heard the tape for yourselves, ladies and gentlemen. . . . We put it [in evidence] there just to show you that . . . there is not much evidence that can be [gleaned] from

it. . . . It was not damaged and we did not do anything to the evidence."

(a) *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) holds that suppression of exculpatory material evidence violates due process. When *Brady* material is suppressed prior to trial but made available during trial, appellant must show that earlier disclosure would have benefitted the defense and that the delayed disclosure deprived him of a fair trial. *Dennard v. State*, 263 Ga. 453, 454 (435 SE2d 26).

Appellant contends that because of the State's failure to produce the tape prior to trial "appellant appeared to the jury as if he had lied about the tape, and his credibility was lost." We agree. The State's implication that *the defense* suppressed or damaged the tape or lied by implying the State suppressed it, misrepresented the facts and grossly prejudiced appellant. The circumstances may constitute prosecutorial misconduct.

We therefore adhere to *Williams v. State*, 250 Ga. 463, 465 (298 SE2d 492), applying a strict standard of materiality in cases involving prosecutorial misconduct or " 'a corruption of the truth-seeking function of the trial process.' " The prosecutor is under a constitutional duty (*Williams*, supra) to disclose evidence which creates a reasonable doubt, as this tape does. The tape may show the informant gave perjured testimony. A conviction obtained by perjured testimony is " 'fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " Id.

We have listened to the tape and we conclude that it is exculpatory. The tape contains such a cacophony of voices, music, and other noise that on one playing it seems to reveal nothing significant. However, these passages can be pieced out by repeated play-backs: "[INFORMANT]: I was gonna get Reginald to buy it because, you know, I didn't want to spook Conrad 'cause I ain't seen him in a while. . . . I want Conrad! [or] 'ownt Conrad! [or] oh Conrad! [MAN'S VOICE]: You going with us? [INFORMANT]: I may. What I'm doin' right now is . . . get this check cashed, get a twenty and then I got some people coming over from the church . . . I don't wanna get too gigged up. . . . [MAN'S VOICE]: I'll give you a twenty. . . . [INFORMANT]: Then I want to come back and talk to Conrad about a hundred dollar piece. [SAME MAN'S VOICE]: See, I can get you a good one. Woo! [ANOTHER MAN'S VOICE]: He spose to be over today? He gonna be coming by today? . . . [INFORMANT]: . . . other boy Conrad? [Voices inaudible.] Goin' to the USA Liquor Store?"

From one playing of the tape defense counsel heard enough to ask the testifying officer: "Can you make the assumption . . . when he was discussing the drugs that he is talking to somebody else and not

[appellant], since he speaks about seeing Conrad?" The officer said: *"At that one point in that conversation,* yes ma'am, because he says he is going to come back and see Conrad." (Emphasis supplied.) The officer implied that the rest of the tape shows the informant is speaking to Conrad, which is not clearly true. It is clear that defense counsel could not hear enough from one play of the tape to analyze it adequately or to mount an adequate cross-examination of the officer who purported to interpret it for the jury and who implied the tape contained what it did not. Further, the prosecutor repeatedly suggested to the jury that the tape showed a drug deal took place involving appellant, and that if the tape had been clear the jury would have heard such a drug deal.

We conclude that the disclosure of this evidence came so late as to deprive appellant of a fair trial. *Dennard,* supra; *Parks v. State,* 254 Ga. 403, 407 (330 SE2d 686). This is more emphatically true under the strict standards to be applied in cases where there is a " 'corruption of the truth-seeking function of the trial process.' " *Williams,* supra.

(b) The State contends defense counsel waived any objection to the suppression of the tape because the bench conference was not recorded, and because she stated that she had no objection to admission of the tape. This is not exactly what occurred. Defense counsel contends that during the bench conference she objected to the playing of the tape, that the court reporter was sitting nearby, and that counsel saw the reporter "typing" and believed the conference was being recorded. *Nicely v. State,* 197 Ga. App. 206 (3) (397 SE2d 630) is therefore inapposite. Since the bench conference was not recorded, there is no basis to conclude counsel waived her objection to illegally suppressed evidence. In the peculiar circumstances of this case and the stern view taken of such cases by *Williams,* supra, no waiver will be inferred in favor of the State. We therefore decline to accept the State's contention that defense counsel waived any objection to this evidence merely because the bench conference was not recorded.

The transcript shows that *after* the bench conference, the State asked if the court would "take it up after lunch. [THE COURT]: We sure would. [Defense counsel], do you object to the tape? [DEFENSE COUNSEL]: No, your Honor, I don't object to the tape at all." In the circumstances, it is not clear whether this was a waiver of all objections which defense counsel undisputedly contends she made at the bench conference or an accession to the trial court's ruling. As to waivers of objections to evidence which is "primarily illegal" and constitutes constitutional error, see *Mable v. State,* 261 Ga. 379 (1) (405 SE2d 48). "Moreover, the law does not take waivers lightly, and a waiver of [an] important right . . . should not be inferred unless it is clear and unmistakable." *State v. Mason,* 181 Ga. App. 806, 807-808

(353 SE2d 915).

The tape was exculpatory, and if it had been produced before trial, the jury might have concluded the informant's testimony was unreliable or perjured, for throughout the tape, he refers to "Conrad" as if appellant was never present. Error occurred which affected the verdict, and no overwhelming evidence saved it. See *Hamilton v. State*, 239 Ga. 72, 77 (235 SE2d 515); *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133).

2. As we reversed the verdict in Division 1, it is unnecessary to consider whether the trial court erred in limiting the number of times the jury could view the arrest video.

3. There were other prejudicial errors which we note for the record. The trial court over objection allowed appellant's probation officer to testify at length that appellant was on "intensive probation." This highly prejudicial evidence showed appellant was previously convicted of a serious crime (which conviction the trial court properly disallowed as a "similar transaction"). The evidence was admitted ostensibly to show the search was legal; however, appellant did not contend the search was illegal, so there was no need to introduce the evidence. Further, the prosecutor was allowed, over objection, to ask witnesses why the officer who stopped appellant at his apartment complex told a bystander that "this guy's a frequent drug user." The trial court allowed these questions on grounds that defense counsel introduced the videotape. However, the hearsay statement of an officer to a bystander that appellant was a "frequent drug user" was not competent or relevant evidence of the crime charged in this case, and its repeated injection prejudiced appellant.

*Judgment reversed. Cooper and Blackburn, JJ., concur.*

DECIDED MAY 27, 1994.

*Leslie J. Cornwell*, for appellant.
*Cheryl F. Custer, District Attorney, Alan S. Clarke, Assistant District Attorney*, for appellee.