## A97A1041. MONDY v. THE STATE.
(494 SE2d 176)

BLACKBURN, Judge.

Shannon Blaine Mondy was convicted of possession with intent to distribute methamphetamine, possession of marijuana, driving under the influence, no proof of insurance, and failure to maintain lane. He alleges that the trial court erred in denying his motion for

new trial. Specifically, he claims that, because the State failed to provide him with an existing videotape of the traffic stop which led to his arrest, *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) was violated. He also claims he was entitled to a new trial because, after trial, he discovered that this same videotape illustrated that one of the State's witnesses perjured himself at trial. Mondy additionally asserts that he received ineffective assistance of counsel. For the reasons set forth below, we reverse.

1. Mondy claims he was entitled to a new trial due to the State's *Brady* violation. In reviewing a trial court's denial of a motion for new trial, this Court determines whether or not the trial court abused its discretion in denying the motion. See *Humphrey v. State*, 207 Ga. App. 472, 475 (1) (428 SE2d 362) (1993). The facts show that the stop of the vehicle Mondy was driving prior to his arrest was recorded by a video camera located in the arresting officer's patrol car. Although Mondy filed a broad pre-trial discovery motion pursuant to *Brady*, supra, requesting all exculpatory matter in the State's possession, the State did not disclose the existence of the videotape.[1]

Mondy proceeded to trial and first learned of the tape when the State announced its existence to the court during the trial. Although the tape was never tendered into evidence, Mondy was nonetheless aware of its existence from early in the proceeding. In fact, while conducting a *Jackson-Denno* hearing, Mondy's attorney questioned the arresting officer about the existence of the tape. Despite this knowledge, however, Mondy made no motion regarding the tape at trial. He did not ask for a continuance in order to review the tape, ask the court to conduct an in camera review of the tape before proceeding with the trial, or otherwise indicate in any fashion the existence of a *Brady* violation.[2]

"We find no merit to the defendant's contention that the trial court erred by failing to grant a new trial on the ground that the state did not disclose exculpatory evidence in violation of *Brady v. Maryland*, [supra]. No such objection was made at trial, and the defendant has waived his right to raise this objection on appeal." *Jones v. State*, 258 Ga. 249, 250 (6) (368 SE2d 313) (1988). Accordingly, the trial court did not err in failing to grant Mondy a new trial on this ground.

2. Mondy contends that he is entitled to a new trial because the

---

[1] Although he was arrested after the effective date of OCGA § 17-16-1 et seq., Mondy did not opt in under that section.

[2] "If it is [Mondy's] contention that additional time for investigation [of the exculpatory material revealed at trial] would have enhanced his defense, the proper motion would have been for an adequate recess." (Punctuation omitted.) *Wright v. State*, 220 Ga. App. 233, 235 (3) (469 SE2d 381) (1996).

State procured his conviction through perjured testimony. The facts show that at trial, the State called Johnny Sutton, a passenger in the back of the car who was arrested along with Mondy upon discovery of the drugs, as a rebuttal witness. Following Mondy's testimony, wherein he disavowed all knowledge of the drugs, the State called Sutton to the stand. Sutton also disavowed all knowledge of the drugs except for one marijuana cigarette and testified that he only discovered the presence of drugs in the car when the officer pointed them out. Mondy contends this testimony materially contradicts Sutton's statements made to the officer on the videotape discussed in Division 1, supra, and he argues that Sutton's perjury entitles him to a new trial.[3]

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (Punctuation omitted.) *Williams v. State*, 250 Ga. 463, 465 (298 SE2d 492) (1983), quoting *United States v. Agurs*, 427 U. S. 97, 103-105 (96 SC 2392, 49 LE2d 342) (1976). If " 'the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury,' " such a conviction may require reversal under the above standard. *Williams*, supra at 465.

Our repeated reviews of the videotape indicate that Mondy's and Sutton's voices are discernible over the background noises on the tape, and while they are not pictured as they speak, their individual voices are identifiable. After the two men alight from the car at the officer's request, the officer notes the smell of marijuana smoke and asks the men where the marijuana is located. In response, Sutton points out a marijuana cigarette to the officer, which cigarette Sutton had thrown down when the car was stopped. At trial, Sutton admitted having possessed the marijuana cigarette.

The tape then shows the officer asking the men if there are any other drugs in the car and specifically if two bags located in the back seat of the car contain drugs. When asked, Sutton identifies one of the bags as his, points out the presence of drugs in the bag to the officer, tells the officer how much he paid for the drugs, indicates to the officer for what some of the drugs are used, i.e., a "cutting agent," and admits buying the drugs either for or from his brother. The tape also shows the officer discovering drugs in a bag Mondy identified as his, but Mondy's identification of the bag was ruled inadmissible at trial due to the officer's failure to give *Miranda* warnings.

---

[3] Although Mondy argued this issue at his motion for new trial, the trial court's order denying that motion does not address the issue.

At trial, however, when the prosecutor asked him if he had any drugs in his bag, Sutton answered, "[a]t the time [of the stop] I didn't." The prosecutor then asked if Sutton discovered at some point that he did have drugs in his bag, and Sutton responded, "yes, ma'am, I sure did . . . when the police officer started going through our bag." On cross-examination, Mondy's attorney asked Sutton whether or not he had knowledge of any drugs being in the car before the police officer discovered them, and Sutton denied having knowledge of any drugs except for the marijuana cigarette. He further testified in response to Mondy's attorney's questions that at the time, he did not think there were drugs in the bag, and that he did not know his bag contained methamphetamine until the police officer discovered it.

It is clear that Sutton's trial testimony regarding his knowledge of the presence of drugs in his bag and in the car, exclusive of the marijuana cigarette, is completely opposite of what the videotape shows he told the officer at the time of the stop. Although he told the jury that he did not know there were drugs in his bag until the officer discovered them, on the tape Sutton admits ownership of the bag, points out the drugs to the officer, tells the officer how much he paid for the drugs, and indicates to the officer where he and Mondy were headed with the drugs. Sutton was so cooperative with the officer, in fact, that at one point the officer comments that because the men showed him where the drugs were and admitted possessing them, the officer would make note of that and charge them with misdemeanors instead of felonies.[4] At trial, the officer testified that Mondy had pointed out where the drugs were located in the car.

Although Sutton's admissions on the videotape do not exonerate Mondy, they are still material to the determination of Mondy's guilt. At trial, Sutton's testimony implied that Mondy had placed drugs in Sutton's bag without Sutton's knowledge. Sutton testified that his bag had been left unattended at Mondy's house for some period of time prior to the stop, that the last time he saw his bag before discovering it in the car had been at Mondy's house, and that he had not moved the bag from Mondy's house prior to the stop. Mondy's testimony was exactly opposite Sutton's, as Mondy implied that Sutton or some other person had placed drugs in Mondy's bag. Sutton, however, denied having placed anything in Mondy's bag.

Because Sutton's statements to the officer prove that Sutton knew what was in his bag and how it had come to be there at the time of the stop, and because his testimony implied to the jury that

---

[4] Mondy was, of course, ultimately charged with the felony of possession of methamphetamine with intent to distribute. It is not clear from the record what Sutton was ultimately charged with.

Mondy must have placed the drugs in Sutton's bag, we cannot say as a matter of law that there is no reasonable likelihood that Sutton's false testimony affected the judgment of the jury. See generally *West v. State*, 213 Ga. App. 362, 364 (1) (a) (444 SE2d 398) (1994) (conviction reversed because audiotape of alleged drug buy "may show the informant gave perjured testimony" at trial). Even if we were to find that the videotaped admissions were not material, and were merely impeaching of Sutton's trial testimony, "[i]t is elementary that the State may not knowingly use false testimony to obtain a conviction, even when the falsity relates solely to the credibility of a witness." *Howard v. State*, 220 Ga. App. 267, 270 (3) (b) (469 SE2d 396) (1996).

On the facts of this case, we must also conclude that the State knew or should have known that Sutton's trial testimony was untruthful. This is so because the State had knowledge of what was on the videotape. In fact, at one point, the State had a videocassette recorder and television set assembled in the courtroom in order to show the videotape to the jury. Although the jury never saw the videotape, it is clear that the State was familiar with the contents of the tape, and therefore knowledge of Sutton's comments to the officer must be imputed to the State.

The fact that Mondy waived any *Brady* violation with respect to the tape does not affect our analysis. Although Mondy may have waived his right to view the tape and use it in his favor at trial, he did not waive his right to be convicted free from perjury. The perjury and the *Brady* issues are separate — though the State may have been released by Mondy's waiver from the responsibility to produce the tape, under no circumstances was it released from the duty to convict Mondy without knowingly using perjured testimony which was brought to light by the tape.

Although Mondy should have known at trial that Sutton was offering perjured testimony, since Mondy was present when Sutton made his statements to the officer, on the facts of this case, Mondy also did not waive the perjury which occurred at trial. See *Kitchens v. State*, 160 Ga. App. 492, 493 (2) (287 SE2d 316) (1981) ("the right to claim a denial of due process on the ground that perjured testimony was used by the state may be waived"). As set forth above, Mondy's attorney repeatedly attempted to elicit testimony from Sutton that Sutton knew, prior to being stopped by the officers, that the bags contained drugs. However, Sutton denied any such knowledge every time the question was asked. "Trial counsel's unsuccessful attempt to get the witness' prior statements before the jury does not amount to the passivity shown by the defense attorneys in cases where a defendant was found to have waived his right to claim a denial of due process. We hold that appellant did not waive his right to a jury verdict untainted by perjured testimony." Id.

Accordingly, because we cannot conclude that there is no reasonable likelihood that Sutton's false testimony affected the judgment of the jury, see *Williams*, supra at 465, Mondy is entitled to a new trial.

3. Mondy also alleges that he is entitled to a new trial because he received ineffective assistance of counsel. Inasmuch as we have granted Mondy a new trial on other grounds, we need not address this issue.

*Judgment reversed. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 2, 1997 —
RECONSIDERATION DENIED NOVEMBER 13, 1997.

*Elizabeth A. Baker*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.

