A08A1592. HARDY v. THE STATE.
(666 SE2d 730)

BLACKBURN, Presiding Judge.

Following a jury trial, Walter J. Hardy appeals his conviction for committing aggravated assault,[1] possessing a firearm during the commission of a felony,[2] giving a false name,[3] and obstructing an officer.[4] Beyond challenging the sufficiency of the evidence, he argues that the trial court erred in (i) not striking the entire testimony of the victim on grounds of false swearing, (ii) allowing the victim to refer to a prior difficulty between her and Hardy, and (iii) denying Hardy's motion for mistrial based on the State's having improperly bolstered one of its witnesses. Discerning no error, we affirm.

1. When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[5] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged

---

[10] *Leader Nat. Ins. Co. v. Kemp & Son, Inc.*, 189 Ga. App. 115, 118 (4) (375 SE2d 231) (1988).
[1] OCGA § 16-5-21 (a) (2).
[2] OCGA § 16-11-106 (b) (1).
[3] OCGA § 16-10-25.
[4] OCGA § 16-10-24 (a).
[5] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

offense beyond a reasonable doubt. *Jackson v. Virginia.*[6]

So viewed, the evidence shows that the victim in this case (Hardy's wife) and Hardy were arguing at their home with their children present. The victim announced that she and the children were leaving Hardy and instructed the children to pack their clothes. While the victim took Hardy on an errand to the store, the children (at the victim's surreptitious request) were to leave the home with their clothes; instead, they secreted themselves in the crawl space under the home. When the victim and Hardy returned and found the children absent, Hardy became very angry and repeatedly told the victim, "[Y]ou remember the last time I told you if you involve the police into anything[,] I was going to kill you." After compelling her to remove her clothing and to lie on a bed, he retrieved a handgun and held it to her head, causing her to involuntarily urinate on herself. He chambered a round and threatened to kill her. Observing this take place through a crack in the floor while in the crawl space, the oldest child called her grandmother on a cell phone, who summoned police. To disrupt the possible killing, the children came screaming out of the crawl space into the yard; they were then ordered into the home by the parents.

An officer knocked at the front door, which was answered by the victim and a daughter. Fearful about her children's welfare who were elsewhere in the house with Hardy, the victim told the officer that everything was fine and convinced the officer to leave. Hardy eventually calmed down, but when the victim and the children began exiting the home, Hardy stopped the victim and set fire to the residence. Hardy and the victim escaped and joined the children; when confronted by police responding to a neighbor's fire emergency call, Hardy gave a false name and then fled, only to be apprehended shortly thereafter.

A jury found Hardy guilty of aggravated assault against the victim, possession of a firearm while committing a felony against the victim, giving a false name, and obstruction of an officer.[7] Claiming no credible evidence showed that he used a gun or that the victim was apprehensive of receiving a violent injury, Hardy challenges the sufficiency of the evidence on the aggravated-assault and possession-of-a-firearm convictions.

Three separate witnesses testified that Hardy threateningly pointed a gun at the victim's head, including the victim herself and two of her daughters (from their observation point in the crawl space

---

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] Sixteen other charges against Hardy were either nolle prossed, dismissed after a directed verdict motion, or resulted in an acquittal.

through the crack in the floor). Because the testimony of a single witness would have sufficed (OCGA § 24-4-8), this was ample. See *Cortez v. State*.[8] On appeal, Hardy's contention (argued vociferously to the jury) that other evidence showed the gun was in a locked car during the assault, simply presented a conflict in the evidence that the jury obviously resolved against him.

Regarding the need to show the victim's "reasonable apprehension of immediately receiving a violent injury" (OCGA § 16-5-20 (a) (2)), the State presented evidence from the victim's own mouth that she feared the gun and that this fear resulted in her urinating on herself and in her lying to the officer at the front door to protect her children. This evidence sufficed to show apprehension. See *Flores v. State*.[9]

2. Citing OCGA § 24-9-85, Hardy argues that the trial court erred in denying his motion for new trial. Specifically, he argues that the court should have stricken the entire testimony of the victim on the ground that during the trial, the victim testified that she was leaving Hardy for personal reasons and not because of any alleged affair of his with another woman. At the motion-for-new-trial hearing, Hardy presented evidence that in her verified divorce petition (filed after the incident at issue but before trial), the victim had listed adultery as one of the grounds for divorce. Hardy contends that the trial testimony therefore constituted false swearing and should have been stricken in its entirety, resulting in a new trial for him.

OCGA § 24-9-85 (b) provides: "If a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." Interpreting this statute, the Supreme Court of Georgia held that "the testimony which must be disregarded in its entirety is only that testimony which is wilfully and knowingly false." (Emphasis omitted.) *Fugitt v. State*.[10] There must be a "showing that the victim's testimony was wilfully and knowingly false or that the testimony was such as to render the purpose to falsify manifest." (Punctuation omitted.) *Turner v. State*.[11]

No such showing was made here. Assuming her reasons for leaving Hardy were material to the case, we hold that the victim here merely testified at trial that in January 2006 (the date of the incident), she wanted to leave Hardy because she was tired of the

---

[8] *Cortez v. State*, 286 Ga. App. 170, 172 (1) (a) (648 SE2d 488) (2007).

[9] *Flores v. State*, 277 Ga. 780, 782 (2) (596 SE2d 114) (2004).

[10] *Fugitt v. State*, 251 Ga. 451, 452-453 (1) (307 SE2d 471) (1983).

[11] *Turner v. State*, 245 Ga. App. 294, 297 (4) (d) (536 SE2d 814) (2000).

relationship for personal reasons, and that an affair by Hardy had nothing to do with it. At the motion-for-new-trial hearing, she explained that her listing adultery as an additional reason in the divorce petition filed some nine months later in October 2006 was not inconsistent, since her primary motivation in January 2006 was the repeated abuse at her husband's hands, as exemplified in the violent incident which led to his arrest in this matter. The fact that nine months later she would list this cruel treatment as the grounds for divorce and also add adultery as yet another reason is hardly inconsistent and certainly does not mean that her testimony at the trial constituted a knowing and wilful false swearing. Indeed, even if this testimony were inconsistent, inconsistent testimony alone does not rise to the level of false swearing. See *Turner*, supra, 245 Ga. App. at 297 (4) (d).

Moreover, assuming this portion of her testimony were a knowing and wilful false swearing, we hold that only that portion of the testimony, not her entire testimony, would be disregarded. See *Fugitt*, supra, 251 Ga. at 452-453 (1). The portion setting forth Hardy's aggravated assault and possession of a firearm would remain intact.

We discern no abuse of discretion in the court's denial of Hardy's motion for new trial on this ground. See *Mondy v. State*[12] (abuse-of-discretion standard applies to rulings on motions for new trial).

3. Hardy contends that the court erred in allowing the victim to testify to an unrelated prior difficulty between herself and Hardy. Specifically, the victim testified that just prior to retrieving the gun, Hardy repeatedly told her, "[Y]ou remember the last time I told you if you involve the police into anything[,] I was going to kill you." Hardy's argument that this was inadmissible lacks merit.

First, the victim was not recounting a prior difficulty but was simply repeating words out of Hardy's own mouth, which explained his violent behavior that then immediately followed. It was part of the res gestae and also tended to show motive and was therefore admissible. See *Rogers v. State*.[13]

Second, assuming this constituted a prior difficulty between the parties, it "was properly admitted to show the relationship between [Hardy] and the victim and to show his motive, intent and bent of mind in committing the charged crimes." *Frazier v. State*.[14] We discern no error.

---

[12] *Mondy v. State*, 229 Ga. App. 311, 312 (1) (494 SE2d 176) (1997).
[13] *Rogers v. State*, 292 Ga. App. 90, 92 (2) (663 SE2d 789) (2008).
[14] *Frazier v. State*, 278 Ga. 297, 297-298 (2) (602 SE2d 588) (2004).

4. In his final enumeration of error, Hardy claims that the court erred in denying his motion for mistrial that arose when the State asked one of the daughters on re-direct examination whether she was telling the truth about everything, and she responded, "Yes." Hardy objected to this as improper bolstering, which objection the court sustained. The court then struck the answer and instructed the jury to disregard the answer. Hardy moved for a mistrial, which the court denied.

We discern no error for two reasons. First, the question followed Hardy's lengthy cross-examination of the daughter, in which Hardy vigorously tried to impeach her on several matters, including the location of the gun in the locked car and the lack of an observation crack in the floor above the crawl space. Where a witness has been impeached by the adverse party, the other party may bolster the veracity of that witness by asking such a question. *Miller v. State.*[15]

Second, even if the question were improper, the trial court here immediately struck the answer and instructed the jury to disregard the answer. Where the answer constitutes improper bolstering, "the corrective measure to be taken by the trial court is largely a matter of discretion. A trial court's ruling on a motion for mistrial will not be disturbed if the court has taken remedial measures sufficient to ensure a fair trial." (Footnote omitted.) *Cortez*, supra, 286 Ga. App. at 174 (2). We see no reason to disturb the trial court's ruling here.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 24, 2008 —
RECONSIDERATION DENIED AUGUST 8, 2008 — ▇▇▇▇▇▇▇

*Jason B. Sheffield*, for appellant.
*Jewel C. Scott, District Attorney, Dawn Belisle-Skinner, Assistant District Attorney*, for appellee.

---

[15] *Miller v. State*, 275 Ga. 32, 37-38 (5) (561 SE2d 810) (2002).