## A10A2204. SMITH v. THE STATE.
(709 SE2d 823)

ADAMS, Judge.

Earnest Lee Smith appeals the trial court's denial of his motion for new trial after a jury convicted him on one count of aggravated assault. Smith does not contest that the evidence was sufficient to support his conviction. Rather, he asserts that he is entitled to a new trial on the following grounds: (1) prosecutorial misconduct; (2) newly discovered evidence; (3) ineffective assistance of counsel; and (4) the trial court's failure to hold a pre-sentencing hearing. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed that on or around September 25, 2005, Smith got into an argument with Robert Harris as Harris was attempting to exit a store in Broxton, Georgia, to return to his truck. Harris testified that as he reached his truck, Smith pulled up in his own truck and called Harris' name in a pleasant tone. Harris had turned and begun walking toward Smith's truck when he saw that Smith had a gun in his hand. Harris stopped and said, "I guess you think you are going to shoot me. . . ." Harris testified that he was six to seven feet away from Smith's truck at the time. Smith then "cursed loudly" and shot Harris. Harris was transported to a hospital for treatment of his injuries.

Smith testified, however, that no real argument occurred that day; the two were just "talking." And he stated that he never pointed a gun at Harris. Instead, he said that he kept a gun on the console of his truck. Smith was inside the truck when Harris ran over and tried to open the truck door. Smith locked the door and grabbed his gun. Harris then reached into the window and grabbed Smith's arm and also grabbed at the gun. Smith said that Harris was holding the barrel of the gun when it went off.

No other eyewitnesses to the shooting testified at trial, but Haley Strom, who was in a nearby parking lot, testified that she heard two men arguing and she heard a gun. She turned around and saw a man holding a pistol out of his truck window. The man then

drove away quickly, with tires squealing.

Smith moved for a new trial following his conviction, and the trial court denied the motion without explanation. We review the trial court's order for an abuse of discretion. *Locher v. State*, 293 Ga. App. 67, 72 (3) (666 SE2d 468) (2008); *Mondy v. State*, 229 Ga. App. 311, 312 (1) (494 SE2d 176) (1997) (abuse-of-discretion standard applies to trial court's ruling on motions for new trial).

1. Smith argues that he was entitled to a new trial because the prosecution failed to disclose evidence favorable to the defense. He asserts that the prosecution was aware that two of the police officers who participated in the investigation of the incident, Chief Hugh L. McReady and Investigator Steve Dixon, had concluded that the shooting was self-defense, but the prosecution failed to inform Smith's attorney of this.

McReady testified at the hearing on the motion for new trial that he was Chief of Police for the City of Broxton at the time of the shooting and he oversaw the investigation in this case. He was present when Harris was interviewed and when he re-created the shooting for police. McReady said he had "strong feelings" that the shooting had been self-defense based upon the trajectory of the bullet through Harris' arm and blood discovered on the outside of the truck which seemed to show that Harris was standing close to the truck at the time of the shooting. He identified a photograph showing one drop of what appeared to be blood on the outside of the truck as the basis for his opinion. McReady testified that he just assumed that the blood was Harris', but he acknowledged that Smith was also bleeding that day and the blood could have been Smith's. Blood evidence was collected by the Georgia Bureau of Investigation, but the evidence was lost, so the blood was never matched to anyone. Moreover, McReady said that he spoke to Smith's attorney about these concerns one to two days before the trial began. Smith's trial attorney testified on direct, however, that he did not speak to McReady until the evidence at trial was closed, although he conceded on cross-examination that he may have spoken to him earlier in the day before the close of evidence.

The evidence at the hearing, therefore, supports a finding that Smith was on notice of the information he now claims was withheld by the prosecution before the trial concluded. Yet he raised no objection and made no claim at trial that the State had violated *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), by withholding exculpatory information.[1] Accordingly, the trial court

---

[1] "If it is [Smith's] contention that additional time for investigation of the exculpatory material revealed at trial would have enhanced his defense, the proper motion would have been

could have concluded that Smith waived his right to raise this issue. See *Nelson v. State*, 279 Ga. App. 859, 864 (2) (632 SE2d 749) (2006); *Mondy v. State*, 229 Ga. App. at 312 (1).

But even in the absence of waiver, Smith's argument provides no ground for a new trial. In order to obtain a new trial based upon a *Brady* violation, Smith would be required to prove, among other things, that he did not possess the evidence and could not have obtained it with due diligence and that a "reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed." (Citation omitted.) *Ellis v. State*, 289 Ga. App. 452, 455 (2) (657 SE2d 562) (2008). Here, Smith's counsel conceded that the State provided him the evidence upon which McReady based his opinion. And he discussed the blood evidence with the police before trial and knew that it was missing or destroyed. He admitted questioning the State's police witnesses about the blood evidence. Thus, Smith cannot establish that he did not possess the pertinent *evidence*.

Rather, Smith's argument on appeal appears to be he was not told of McReady's or the other officer's assessment of that evidence. The officers' opinions, however, are not evidence and, as Smith's counsel acknowledged, would not have been admissible at trial.[2] In any event, Smith made no attempt to put McReady on the stand once he became aware of his assessment of the evidence. Moreover, even if he had called McReady as a witness, the prosecutor cast some doubt on McReady's opinion as to the bullet's trajectory and the blood evidence when he cross-examined McReady at the motion hearing.

Additionally, Smith's counsel knew from the beginning that Smith would be pursuing a claim of self-defense. Smith's counsel argued to the jury that the blood on the outside of the truck created reasonable doubt and further argued that the evidence of how the bullet struck Harris supported Smith's version of events and not Harris' version. Accordingly, Smith's counsel argued to the jury the very evidence McReady cited in support of his opinion. Smith, therefore, cannot establish a "reasonable probability" that the outcome of his trial would have been different if the State had disclosed McReady's opinion earlier. Accordingly, no new trial was warranted and the trial court did not abuse its discretion in denying Smith's motion on this ground. See *Ellis v. State*, 289 Ga. App. at 457 (2).

---

for an adequate recess." (Citation and punctuation omitted.) *Mondy v. State*, 229 Ga. App. at 312 (1), n. 2.

[2] Indeed, Smith's counsel stated before that he would not be asking any witness for his opinion as to whether the shooting was self-defense, and thus effectively consented to the State's Motion in Limine in this regard.

2. Smith also asserted that the trial court erred in denying his motion for new trial on the ground of newly discovered evidence. To support this argument, Smith presented the testimony of Charlie Riley at the motion hearing. Riley testified that he was an eyewitness to the shooting. "Motions for new trial on the ground of newly discovered evidence are not favored and are addressed to the sole discretion of the trial judge, which will not be controlled unless abused." (Citation and punctuation omitted.) *Robinson v. State*, 308 Ga. App. 45, 48 (2) (d) (706 SE2d 577) (2011). See also *Rivera v. State,* 296 Ga. App. 152, 153 (2) (673 SE2d 642) (2009) (trial court's determination entitled to great consideration).

Charlie Riley testified that Smith and he had been friends all their lives. He had also known Harris all his life. On the morning of the shooting, he was scheduled to meet Smith at the store, as he did every day. Riley said that he was at the store and had a direct view of Smith and Harris at the time of the shooting. He said Harris was within one to two feet of Smith's truck and was "fixing to reach into" or "reaching toward" the truck when he was shot. After the shooting, Riley went inside the store and told them to call 911; then he left the scene. He never told anyone what he saw because he thought the whole thing had been "settled." Although he saw Smith several times since, he never talked to him about the shooting, and Smith never asked him about it, in the intervening three years before trial. It was only when he found out that Smith had been convicted that he came forward.

In order to establish a basis for new trial on this ground, Smith was required to show, among other criteria, that it was not owing to the want of his own due diligence that he did not acquire the evidence before trial. See *Timberlake v. State,* 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). But Smith cannot show that he exercised due diligence in obtaining Riley's testimony. Riley testified that he was a lifelong friend whom Smith met every morning at the store for coffee. Riley testified that Smith knew he would be at the store that day, yet for three years Smith never asked Riley about the shooting and never gave his attorney Riley's name as a potential witness. "Given [Smith's] failure to show due diligence, the trial court acted within its discretion in denying the motion for new trial." (Citation omitted.) *Woodard v. State*, 289 Ga. App. 643, 649 (658 SE2d 129) (2008).

3. Smith next asserts that the trial court erred in failing to grant his motion for new trial on the ground that he received ineffective assistance of counsel. To obtain a new trial on this ground, Smith must satisfy the two-prong test under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) by showing that his counsel's performance was deficient and that this performance

prejudiced his defense. *Lawson v. State*, 280 Ga. App. 870, 872 (2) (635 SE2d 259) (2006). To establish the requisite prejudice, Smith must prove "a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency." (Punctuation and footnote omitted.) Id. "Moreover, there is a strong presumption that trial counsel's performance fell within the broad range of reasonable professional conduct." (Footnote omitted.) Id. And this Court "must accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we apply the appropriate legal principles to the facts independently." (Citations and punctuation omitted.) *Henry v. State*, 279 Ga. 615, 616 (3) (619 SE2d 609) (2005). See also *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).

(a) Smith argues that his trial counsel was ineffective in failing to adequately investigate the case or meet with him prior to trial. In particular, Smith notes that his trial attorney did not listen to an audio recording of his interview with police until admonished by the trial court on the day of trial that it would be error not to do so.

The evidence showed that Smith's trial attorney met with Smith when he was first assigned the case and then met with him briefly at the end of each calendar call to discuss the continuances. He said that he probably spent 30 minutes or less with Smith before the trial, and he discussed Smith's testimony with him the day of trial when they were deciding whether to put him on the stand. But he stated that he never refused to speak with Smith, who was out on bail prior to trial but never requested to meet with counsel. He discussed the case with Smith's son and knew Smith had been injured when Harris supposedly reached into the window. Smith's son also provided a list of witnesses, and Smith's counsel spoke with at least one of those witnesses, a clerk at the store. The other witness he recalled was Smith's daughter, who knew Smith had been injured, but who was not present at the shooting. Counsel also spoke before trial with Marvin Pridgen, another man who had been at the store that day, and he spoke with McReady and Lee Clements, another investigator, on the day of trial.

The attorney also reviewed the discovery, including incident reports and photographs provided by the State prior to trial and recalled that he questioned either McReady or Clements earlier about the whereabouts of the blood evidence disclosed in those documents. The State did not produce the tape recording of Smith's interview until the morning of the trial and the prosecutor represented that he did not have the tape until that morning. The State also provided a tape recorder at that time to allow Smith's counsel to hear the tape. Smith's counsel said that he was familiar with the police investigation, including his client's re-creation of events, and

felt he knew before trial what the witnesses would be saying. He felt prepared to present Smith's defense of justification/self-defense at trial.

Less than 30 minutes seems a very small amount of time to spend with a client charged with aggravated assault, even for a public defender who handles 500 cases per year as Smith's trial attorney does. Certainly, the better practice would have been to spend more time with the client given the serious nature of the charge. But the trial court could have found that the attorney's trial preparation was not limited to the time he spent with Smith. The court could have found that he also discussed the case and potential witnesses with Smith's son, he interviewed a number of witnesses, he reviewed the discovery provided by the State and followed up on the blood evidence. Based upon this preparation, Smith's trial counsel presented his defense of justification to the jury through cross-examination and argument.

Even if we were to find that Smith's trial counsel's performance was deficient in this regard, however, it does not relieve Smith of his burden of establishing how his defense was prejudiced. Smith's complaint that his attorney spent an inadequate amount of time with him "is not dispositive, as there exists no magic amount of time which counsel must spend in actual conference with his client." (Citations omitted.) *Henry v. State*, 279 Ga. at 616 (3). Smith must also establish a reasonable probability that further conferences and preparation by his trial counsel would have resulted in a different outcome, and he has failed to carry this burden. For example, while the record does not reflect whether Smith's attorney actually listened to the tape of his police interview, neither party sought to use the tape at trial, and no transcript or description of the tape's contents appears in the record. Thus, Smith has not proven any prejudice arising from the tape. Nor has he "specifically describe[d] how additional communications with [or investigation by] his lawyer would have changed the outcome of his trial." (Citations and punctuation omitted.) Id.

Accordingly, we cannot say that the trial court's denial of the motion for new trial on this ground was an abuse of discretion.

(b) Smith next contends that his trial counsel was ineffective because he failed to interview and cross-examine the State's witnesses.

Smith's trial counsel cross-examined all of the State's witnesses except one witness who testified only that he was asleep in his truck outside the store at the time of the shooting and was awakened by the sound of a gunshot. He saw that Harris was injured but he did not see who shot him. Smith fails to explain how the failure to cross-examine this witness prejudiced his defense. But Smith also

complains about the length and thoroughness of his trial counsel's cross-examination of the other witnesses. He notes that his attorney did not question the police witness about the "sloppiness" of the investigation and the angle of Harris's injuries.

It is well established, however, that "the scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Cooper v. State,* 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007). While Smith's counsel's cross-examination of the police witness did not specifically bring out the fact that the blood evidence had been lost, the attorney argued in closing that the State had never established whose blood it was and that this created reasonable doubt. In addition, the trial attorney questioned the officer about other "holes" in the investigation, such as the failure to take and analyze gunshot residue evidence. And a description of Harris' injuries was in evidence, allowing trial counsel to argue that the injuries did not square with Harris' version of events. Thus, Smith has not established a reasonable probability that further interviews and cross-examination would have resulted in a different outcome at trial. "[T]he test regarding effective assistance of counsel is to be not errorless counsel, and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance." (Punctuation and footnote omitted.) *Martin v. State,* 300 Ga. App. 419, 421 (3) (685 SE2d 399) (2009). Applying this test, we cannot say the trial court abused its discretion in denying a new trial on this ground.

(c) Smith also argues that his trial counsel was ineffective in failing to file a motion for immunity from prosecution/plea in bar pursuant to OCGA § 16-3-24.2 based upon Smith's claim of self-defense. But "[c]ounsel's decisions on which motions and objections to make are matters of trial strategy and tactics that are within the lawyer's exclusive province and do not amount to ineffective assistance of counsel." *Howard v. State,* 252 Ga. App. 465, 468 (1) (556 SE2d 536) (2001). Smith's trial counsel testified that he considered filing such a motion, but determined that he would have to put Smith on the stand and he "wasn't sure he wanted to go that route."

Moreover, Smith cannot demonstrate how the failure to pursue such a motion harmed him. "[T]o avoid trial under OCGA § 16-3-24.2, a defendant must show that he is entitled to immunity by a preponderance of the evidence." (Citations omitted.) *State v. Thompson,* 288 Ga. 165, 169 (702 SE2d 198) (2010). The evidence in this case was, in effect, a swearing contest. Given Harris' testimony that he was six or seven feet away from the truck and thus not threatening Smith when he was shot, Smith cannot establish that he would have prevailed on such a motion. And although Smith argues that his trial attorney may have learned of additional evidence

through an earlier motion hearing, he points to no evidence or information that Smith's counsel did not possess either before or during the trial. "The fact that [Smith] and his . . . present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that [Smith] received representation amounting to ineffective assistance of counsel." (Citations and punctuation omitted.) *Muller v. State,* 284 Ga. 70, 73-74 (3) (663 SE2d 206) (2008).

(d) Smith further argues that his trial attorney was ineffective in failing to request a jury charge on the use of force in defense of habitation.[3] In support of this argument he cites *Benham v. State,* 277 Ga. 516 (591 SE2d 824) (2004). In that case, the Supreme Court of Georgia found that Benham received ineffective assistance of counsel because his attorney failed to request a charge on defense of habitation, but instead relied only upon self-defense. At the hearing on the motion for new trial, Benham's counsel testified that she considered self-defense to be her client's best defense and that she wanted the jury to believe that Benham acted out of fear for the safety of her children and her, not that she was merely protecting her vehicle. The Court found that this response indicated a lack of understanding of the law, explaining that

> [f]rom this response, it is evident that defense counsel failed to appreciate that the defense of habitation may have justified the use of deadly force in this case even if that amount of force was not necessarily required to repel Kennemore's attack. In failing to adequately research and understand the defenses available to her client, defense counsel rendered assistance that fell below the minimum standard set forth in *Strickland,* supra.

*Benham v. State*, 277 Ga. at 517-518.

Here, Smith's trial counsel admitted in an affidavit that he never asked for a charge on defense of habitation. By the time he testified at the hearing, he no longer remembered whether he had requested a charge on defense of habitation, although he did recall requesting a charge on self-defense. At no time, however, was he ever asked why he failed to request such a charge, nor did he provide an explanation in his affidavit. The record in this case, therefore, does not support a conclusion that Smith's attorney misunderstood the law, as she apparently did in *Benham*. We are left, therefore, with the presumption that trial counsel's performance fell "within the wide range of

---

[3] "Habitation" is defined by OCGA § 16-3-24.1 to include "any dwelling, *motor vehicle*, or place of business." (Emphasis supplied.)

reasonable professional assistance." (Citation and punctuation omitted.) *Higginbotham v. State,* 287 Ga. 187, 190 (5) (a) (695 SE2d 210) (2010) "Where[, as here,] trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome this presumption." (Citation and punctuation omitted.) Id. at 190-191 (5).

Moreover, we conclude that Smith has failed to show how he was prejudiced by the failure to request such a charge under the facts of this case.[4] Here, the jury was charged on the law of self-defense, but rejected that defense, and Smith has not established how a jury charge on defense of habitation would have raised a reasonable probability that the outcome of the case would have been different.

(e) Smith also contends that his trial counsel was deficient in failing to test the thoroughness and good faith of the State's investigation. He asserts that his counsel should have made an issue of the State's loss of the blood evidence, its failure to swab Harris' hands for gunpowder residue and the lack of any analysis from the GBI. Although the evidence at trial showed only two drops of blood and McReady confirmed this amount at the hearing on the motion for new trial, Smith contends that his counsel should have questioned his son about his knowledge of the blood evidence. Smith's son testified at the hearing that he saw blood spattered all over the truck.

But as discussed above, Smith's attorney questioned the police witness about the lack of gunpowder testing and he argued the State failed to prove that the blood evidence supported Harris' version of events. Although Smith's current counsel may have followed a different strategy in light of these omissions, Smith has failed to establish that this would have created a reasonable probability that the outcome of the trial would have been different. Moreover, we note that the trial court was not required to credit Smith's son's testimony regarding the blood evidence, as it was contradicted by McReady and by the photographic evidence at trial. Smith's son admitted that even though he sat through the trial and heard all the evidence, he never told Smith's trial attorney about the blood he saw on the truck.

Thus, we conclude that the trial court did not abuse its discretion in denying Smith's motion for new trial on the ground of ineffective assistance of counsel.

4. Smith also asserts error in the trial court's failure to conduct a pre-sentence investigation before imposing sentence. Smith argues

---

[4] We note that *Benham* is distinguishable on its facts. There, it was uncontroverted the victim was attacking Benham while she sat in her car; someone tried to pull her away from the car at least twice, but she resisted. In addition, the path of Benham's car was blocked and she could not leave the scene. *Benham v. State,* 277 Ga. at 516.

that his counsel was ill-prepared to represent him at the hearing because he had not interviewed Smith's family members. Moreover, Smith apparently informed his trial attorney that he wanted to have his daughter present for the sentencing, but the attorney represented to the trial court that he was ready to proceed with the sentencing hearing. The trial court heard argument and evidence in connection with sentencing. Smith testified on his own behalf as to his health problems, but indicated that he did not owe Harris an apology because he did not do anything to him. He also indicated that he believed the jury had been misled due to the missing blood evidence. After hearing the evidence and argument, the trial court sentenced Smith to twenty years, with ten years to serve.

Smith does not contend that his sentence does not comply with the sentence limits set out in OCGA § 16-5-21 (b) for a conviction for aggravated assault. Nor does he specifically identify any evidence that he contends he was prevented from presenting at the sentencing hearing. He made no proffer, for example, of what his daughter would have said had she been allowed to testify. And Smith cites no authority to support his argument that the trial court's actions somehow violated the law. Accordingly, we conclude that the trial court properly denied Smith's motion for new trial on this ground.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 17, 2011 —
RECONSIDERATION DISMISSED APRIL 12, 2011 — 

*Copeland, Haugabrook & Walker, Tyrone N. Haugabrook, John G. Edwards,* for appellant.

*Richard E. Currie, District Attorney, John A. Rumker, Assistant District Attorney,* for appellee.